**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                      Elisabeth A. Shumaker
      Clerk                                                                         Chief Deputy Clerk

November 20, 1998

**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   96-6410,  *Gaines-Tabb v. ICI Explosives, USA*
              Filed on November 9, 1998

          The opinion filed on November 9, 1998, contains two typographical errors.
On page 10 of the court's slip opinion, the section listing counsel for the defendants-
appellees should read as follows:

> Sheryl G. Snyder, Brown, Todd & Heyburn, PLLC, Louisville, Kentucky (Carl
> Arthur Henlein, Brown, Todd & Heyburn, PLLC, Louisville, Kentucky, and
> Earl D. Mills, Mills & Whitten, Oklahoma City, Oklahoma, with him on the
> briefs), for Defendants-Appellees.

On page 24, the second sentence of the paragraph should read as follows:

> Plaintiffs do not allege a violation of § 21-4207 because the substance
> at issue – AN sold as fertilizer – does not come within the term
> "explosives" as used in the statute.

Please make the correction to your copy of the opinion.

                                        Very truly yours,
                                        Patrick Fisher, Clerk of Court

                                        By:
                                                Keith Nelson
                                                Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 9 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

LENA R. GAINES-TABB; STEPHEN
ABEL; GABRIELLA ALEMAN, as
surviving spouse of Lucio Aleman, Jr.,
deceased; JUDY D. ALFORD; FRED
ANDERSON, as surviving spouse of
Rebecca Anderson, deceased; ADAM
ASHER; MARTHA ASHER; JANICE
AYERS; ANN BAILEY, individually
and as parent and next friend of
Desirae Bailey, a minor; CHERYL
BAKER; CINDY BAKER; CLAYTON
BAKER, JR.; ANN BANKS; JANET
BATTLE, as next of kin of Peola
Battle and Calvin Battle, deceased;
LARRY BATTLE, as next of kin of
Peola Battle and Calvin Battle,
deceased; ANTHONY BEALL; MRS.
BEALL; HENRY BIDDY, as
surviving spouse of Oleta Biddy,
deceased; FREDDY BIVENS; DAVID
BLANKENSHIP; LISA
BLANKENSHIP; J. J.
BLASSENGILL, REV.; WILLIE MAE
BLASSENGILL; EVA MAUREEN
BLOOMER, as co-personal
representative of the estate of Olen
Bloomer, deceased; MICHAEL
BLUMENBERG; WILLIAM
BONNER; LINDA BORGERT; K. R.
BOYER; JAMES BRANNUM; LANA
BRANNUM; BRETT BROOKS;
DRUSILLA BROOKS; LACHRIS

No. 96-6410

BROWN; DAMON BURGESS, as surviving spouse of Kimberly Burgess, deceased; BARBARA BURNS, as surviving spouse of Donald E. Burns, Sr., deceased; KIMBERLY BURT; GLENDA BUSTER; VERNON BUSTER; ALMATENE BYRD; ALBERT WILLIAM CAGLE, as personal representative of the estate of Catherine M. Leinen, deceased; ALICE CALDWELL; CONNIE CALHOUN; JACQUELINE SUE CARNES; DELYNDA CASTEL; MARSHA CATO; RAYMOND CHAFEY, as surviving spouse of Rona Chafey, deceased; GLORIA CHIPMAN, as surviving spouse of Robert Chipman, deceased; DEMETRICK CLIFTON, special administrator of the estate of Larry Turner, deceased; JANICE CLOUGH; RICHARD CLOUGH; CAROL J. COBB; KENNETH COLEMAN; SHERRI COLEMAN; ANTHONY CONLEY; LARHONDA CONLEY; RAYMOND COOPER; SHIRLEY COOPER; CLEOTIA COTTON; LEROY COTTON; JIMMY COUCH; CAROL COVELL, individually and as parent and next friend of Charles George, a minor; PAMELA COVERDALE, as special administrator of the estates of Elijah Coverdale and Aaron Coverdale, deceased minors; MARION CRAIG, JR.; CHRISTOPHER CREGAN, as administrator of the estate of Katherine Cregan, deceased; DONALD CRISP; VIRGINIA SUE

CROSTHWAIT; BRENDA CUDJOE; KATIE DARLING; GLORIA DAVIS, as surviving spouse of Benjamin L. Davis, deceased; JERI WARREN DAVIS; SHERRY G. DAVIS; WILLIAM E. DAVIS; DANIEL L. DEMOSS; JULIE DEMOSS; DIANE DEUBACH; DEANGELO DEVOSE; GREGORY DRIVER, as surviving spouse of Sheila Driver, deceased; CARROLL DUFFEY; JESSIE DUFFEY; YLITA EDD; JESUS ESTRADA; SONIA E. ESTRADA; PAMELA FARAM; JOHNNY R. FARMER, SR.; LINDA FARMER; RONALD FIELDS, as surviving spouse of Carrol Fields, deceased; C. DONALD FISCHER; CHARLENE FORCE; CHARLES L. FORCE; MIKE FRANK; RHONDA FRANK; DEBORAH FURMAN; MICHAEL GATERS; MAGGIE GATES; CLIFTON GEORGE; GARY GESSEL; DARON GIGGER, as guardian of Shequandala Gigger, surviving minor child of Sheila Driver, deceased; BYRON GLENN; E. FAY GLENN; JANE GRAHM; ROBERT GRAHM; BRUCE GRIFFIN, as surviving spouse of Ethel L. Griffin, deceased; CHARLES GRIFFIN, SR.; RHONDA GRIFFIN; RUDOLPH GUZMAN, JR., as personal representative of the estate of Randolph Guzman, deceased; JIM HACKWORTH; VANITA HACKWORTH, individually and as parent and next friend of Malcolm Hackworth, a minor; RASHELL

- 3 -

HAMMONS, individually and as parent and next friend of Donquay Hammons, a minor, and Ryan Hammons, a minor; JEFF HARDWICK; LEON HARRIS; ALLISON HATTON; WILLIE HATTON; CYNTHIA HAWKINS; TANYA HAWTHORNE; CHAD HAYES; DEDRA HAYES; BARBARA HAYS; STEVEN HAYS; TIMOTHY HEARN, as personal representative of the estate of Castine Deveroux, deceased; GLEN HENRY; GINA HERNANDEZ; LALO HERNANDEZ; JAMES HICKS; TOMIKA HILL; JAMES HINSON; STEPHANIE HISEL; DEBORAH HODGES, as personal representative of the estate of Thompson E. Hodges, Jr., deceased; BRENDA HORNBEAK; GARY HOUSELY, as surviving spouse of Linda Coleen Housely, deceased; MELVIN HOWELL, as surviving spouse of Wanda Howell, deceased; RONALD HUFF, as surviving spouse of Robin Huff, deceased, and as next of kin of Amber Denise Huff, a deceased unborn child; NANCY INGRAM; KENNETH IRVING; GRANT ISBELL III; DORIS JACKSON; EDNA JACKSON; GEORGE JACKSON; STEVE JACKSON; JOSEPH JACOBS; ALDO JENKINS, as surviving spouse of Christi Jenkins, deceased; TILLO JOHNSON; BERNARD P. JONES; VONCELLA JONES; CHARLES JORDAN; DEANNA JORDAN, individually and as parent and next

- 4 -

DEVON JORDAN; DONALD
JUNIOR; XANYA JUNIOR,
individually and as parent and next
friend of Brittanie Junior, a minor;
BONNIE KELLEY; TERRY KELLEY;
LARRY KERNELL; NAEEM KHAN;
ONDRE KING, individually and as
parent and next friend of Rukiya
Turner, a minor; HARRY JOE
KOELSCH, as special administrator of
the estate of Valerie Koelsch,
deceased; FRED KUBASTA; JOAN
KUBASTA; ALLEN E. LANE, II;
TARA LANE; ALGIE LAWRENCE;
CLEO LAWSON; TERESA LAWSON;
SONYA LAY; CHRISTIE L. LEE;
KEVIN LEE; MICHAEL J. LENZ, as
surviving spouse of Carrie A. Lenz,
deceased, and as next of kin of Michael
J. Lenz, III, a deceased unborn child;
MATILDA LERMA; DONNEL
LEWIS; MARY LEE LEWIS; MITZIE
LEWIS; MARY LIGGINS, as parent
and next friend of Brandy Ligons, a
minor; DAVID LIKES; SHERYL
LIKES; ERIC LITTLEJOHN;
SHARON LITTLEJOHN, individually
and as parent and next friend of
Schermarco Littlejohn; MARGARET
LOAGUE; MICHAEL LOAGUE;
JOHN LONG, as special administrator
of the estate of Rheta Long, deceased;
LEONARD LONG; J. DAVID
LONGINOTTI; REGINA
LONGINOTTI; VICKIE LYKINS, as
special administrator of the estate of
Norma Jean Johnson, deceased;

LADONNA MADKINS; ANN MARSHALL, as surviving spouse of Raymond Lee Johnson, deceased; LORI MARTIN, as personal representative of the estate of James K. Martin, deceased; MARTHA MARTINEZ, as surviving spouse of Gilberto Martinez, deceased; MARGARET MASSEY; VICKIE MATHES, as next of kin of Tresia Jo Worton, deceased; ERMER MATHIS; STANLEY MAYER; BETTY MCALLISTER; RUSSELL MCALLISTER; JOYCE MCCARTHY, as surviving spouse of James A. McCarthy, deceased; ALEX MCCAULEY; DIANE MCCAULEY; LAVERNE MCCLOUD, individually and as parent and next friend of Nekia McCloud, a minor; DIANA MCDONNELL; MARK MCDONNELL; LINDA MCGILL; TOMMY MCGILL; DENISE MCKENZIE, individually and as parent and next friend of Christy McKenzie and LaNisha McKenzie; DANNY L. MCKINNEY, as surviving spouse of Linda G. McKinney, deceased; ANTHONY MCRAVEN, as surviving spouse of Cartney McRaven, deceased; INELLA MILLER, as administratrix of the estate of Derwin W. Miller, deceased; REGINALD MILLER, as surviving spouse of Anita Hightower Miller, deceased; DORIS MORAVA; SHIRLEY MOSER; CONNIE MUHAMMAD; MUSLIM MUHAMMAD; WILLIAM MUSTONEN, as attorney in fact for Josie Mitchell; WILLIAM

- 6 -

MUSTONEN, as special administrator of the estate of Eula Leigh Mitchell, deceased; MICHAEL NATIONS; GARY NELSON; MCCLAIN NERO; WENDY NICHOLS; SHERRY NIED, individually and as parent and next friend of Dylan Hoefer, a minor; STEVE NIX, as surviving spouse of Patricia Nix, deceased; KENNETH OLDHAM; ROBYN PARENT; TOMMY A. PENDLETON; CLARK PETERSON; KAREN POLLARD; STEPHANIE POPE, as special administrator of the estate of Brenda Daniels, deceased; BARBARA J. POWERS, as personal representative of the estates of Robert L. Luster and Aurelia D. Luster, deceased; STEPHEN PRUITT; YUNG-LAN PRUITT; BEVERLY A. RANKIN; RICKY S. RANKIN; BENJAMIN R. RENTIE, as surviving spouse of Mary Rentie, deceased; LINDA RICCIOTTI; PAUL RICCIOTTI; JAMES RICHARDS; MARTHA RIDLEY, as special administrator of the estate of Kathryn Ridley, deceased; QWENTESIA ROBERTS; TOMMY ROBINSON; VIOLET ROOT, as special administrator of the estate of Alvin Justes, deceased; CHRISTOPHER ROSAS, as surviving spouse of Christine Rosas, deceased; ATHENA ROY, as special administrator of Diane Althouse, deceased;  JOSEPH ROYBAL; RITA RUSHING; SAM A. RUSHING; CHARLENE SANDERS; LISA SCHLEICHER; ALVIN SCOTT, JR.;

ANTHONY SCOTT; CYNTHIA SCOTT; PATSIE SCOTT; CHERYL SCROGGINS, as surviving spouse of Lanny Scroggins, deceased; BILLY SELANDERS; NANCY SHAW; STEWART SHAW; JEAN SIMMS; LOIS SIMPSON; DORIS SMITH; KAREN SMITH, individually and as guardian and next friend of Holly Smith, a minor; KOCHEE SMITH; SHALONDA SMITH; TESS SMITH; TRENT SMITH; DAVID SPENCER, as surviving spouse of Margaret Clark, deceased; DAWN STAGGS; JAMES L. STAGGS; ANGELA STAGLIN; JOHNNY STAGLIN; LOIS STANTON, as executrix of the estate of Lola Bolden, deceased; GWENDOLYN STEELE, as administratrix of the estates of Peola Battle and Calvin Battle, deceased; DANA STEWART, individually and as parent and next friend of Robert Bradley Kernell, a minor; JOYCE SWALLOW; LEE SWITZER, as co-personal representative of the estate of Olen Bloomer, deceased; JUAN TAPIA, as administrator of the estate of Emilio Tapia, deceased; HAROLD TAYLOR, as special administrator of the estate of Laura Garrison, deceased; JOHN TAYLOR, as personal representative of the estate of Teresa Lauderdale, deceased; RUBY TAYLOR; VICTOR TAYLOR; JEFFREY TEEL; SANDRA TEEL; CORY TEMPLET; SARA E. THOMAS; HENRY D. THORNTON; MARILYN TRAVIS; KEITH

VERESS; KIMBERLY WALLACE; BARBARA WARD, as special administrator of the estate of Woodrow Brady, deceased; MARY LOU WASHBURN; RAYMOND WASHBURN; E. MILDRED WATKINS, as administrator of the estate of Wanda Watkins, deceased; DELORIS WATSON, individually and as guardian of P. J. Allen, a minor; WILLIE WATSON; PAMELA WEBER-FORE; EMMETT E. WELCH, as special administrator of the estate of Julie Marie Welch, deceased; LEE ANN WHITTENBERG, as next of kin of Jo Ann Whittenberg, deceased; MARY ANN WHITTENBERG, as next of kin of Jo Ann Whittenberg, deceased; CINDY WIKLE; EVALINE WIKLE; GERALD WIKLE; ROY WIKLE; DANIEL WILKERSON, individually and as parent and next friend of Quinten Wilkerson, a minor; PENNY WILKERSON, individually and as parent and next friend of Quinten Wilkerson, a minor; MICHELLE WILLIAMS; NICOLE WILLIAMS, as surviving spouse of Scott Williams, deceased; PAULA WILLIAMS; GLORIA WILSON, as personal representative of the estate of Clarence Wilson, deceased; ELLA JEWELL WINSTON; FREDDIE WOODARD,

       Plaintiffs - Appellants,

 v.

ICI EXPLOSIVES, USA, INC., a
Delaware Corporation; IMPERIAL
CHEMICAL INDUSTRIES PLC, a
Foreign Corporation; ICI CANADA
INC., a Foreign Corporation; DOE
CORPORATIONS 1-99; DOE
COMPANIES 1-99; JOHN DOES,
1-99; JANE DOES, 1-99,

Defendants - Appellees.

---

**Appeal from the United States District Court
for the W.D. Okla.
(D.C. No. 95-CV-719)**

---

John M. Merritt, Merritt & Rooney, Inc., Oklahoma City, Oklahoma (Johnnie L. Cochran, Jr., Law Offices of Johnnie L. Cochran, Jr., Los Angeles, California, with him on the briefs), for Plaintiffs-Appellants.

Sheryl G. Snyder, Brown, Todd & Heyburn, PLLC, Louisville, Kentucky (Carl Arthur Henlein, Brown, Todd & Heyburn, PLLC, Louisville, Kentucky, and Earl D. Mills, Mills & Whitten, Oklahoma City, Oklahoma, with him on the briefs), for Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, and **EBEL** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Individuals injured by the April 19, 1995, bombing of the Alfred P. Murrah Federal Building ("Murrah Building") in Oklahoma City, Oklahoma, filed suit against the manufacturers of the ammonium nitrate allegedly used to create the

bomb. The plaintiffs' complaint set forth theories of negligence, negligence per se, negligent entrustment, negligent infliction of emotional distress, intentional infliction of emotional distress, manufacturers' products liability, ultrahazardous or abnormally dangerous activity, and fraud and deceit . The district court dismissed the complaint for failure to state a claim upon which relief may be granted, and the plaintiffs appealed. We affirm.

Specifically, we hold that: plaintiffs cannot state a claim for negligence or negligence per se because they cannot show, as a matter of law, that defendants' conduct was the proximate cause of their injuries; they cannot state a claim for negligence per se under one of the state statutes at issue because ammonium nitrate is not an "explosive" covered by the statute; they cannot state a claim for manufacturers' products liability because there is no adequate allegation that the product at issue was unreasonably dangerous due either to a defective design or a failure to warn; and their remaining claims are waived for failure to argue them on appeal.

## BACKGROUND

On April 19, 1995, a massive bomb exploded in Oklahoma City and destroyed the Murrah Building, causing the deaths of 168 people and injuries to hundreds of others. On May 10, 1995, plaintiffs filed this diversity action, on

behalf of themselves and all persons who incurred personal injuries during, or may claim loss of consortium or wrongful death resulting from, the bombing, against ICI Explosives ("ICI"), ICI's parent company, Imperial Chemical Industries, PLC, and another of Imperial Chemical's subsidiaries, ICI Canada. [1]

ICI manufactures ammonium nitrate ("AN"). Plaintiffs allege that AN can be either "explosive grade" or "fertilizer grade." According to plaintiffs, "explosive-grade" AN is of low density and high porosity so it will absorb sufficient amounts of fuel or diesel oil to allow detonation of the AN, while "fertilizer-grade" AN is of high density and low porosity and so is unable to absorb sufficient amounts of fuel or diesel oil to allow detonation.

Plaintiffs allege that ICI sold explosive-grade AN mislabeled as fertilizer-grade AN to Farmland Industries, who in turn sold it to Mid-Kansas Cooperative Association in McPherson, Kansas. Plaintiffs submit that a "Mike Havens" purchased a total of eighty 50-pound bags of the mislabeled AN from Mid-Kansas. According to plaintiffs, "Mike Havens" was an alias used either by Timothy McVeigh or Terry Nichols, the two men tried for the bombing. Plaintiffs

---

[1] Imperial Chemical Industries, PLC and ICI Canada were allowed to join in ICI's motion to dismiss after ICI's motion had been granted. On this basis, the district court dismissed Imperial Chemical Industries, PLC and ICI Canada without any particularized discussion of their separate roles. Because none of the parties sought to differentiate among the three defendants in this appeal, we proceed without discussing any potentially separate allegations against the various defendants.

further allege that the perpetrators of the Oklahoma City bombing used the 4000 pounds of explosive-grade AN purchased from Mid-Kansas, mixed with fuel oil or diesel oil, to demolish the Murrah Building.

Plaintiffs' Third Amended Complaint presented theories of negligence, negligence per se, negligent entrustment, negligent infliction of emotional distress, intentional infliction of emotional distress, manufacturers' products liability, strict liability for ultrahazardous or abnormally dangerous activity, and fraud and deceit. In an extensive opinion, the district court granted ICI's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. See Gaines-Tabb v. ICI Explosives USA, Inc., 995 F. Supp. 1304 (W.D. Okla. July 2, 1996). Imperial Chemical and ICI Canada subsequently moved to join ICI's motion to dismiss. Plaintiffs did not oppose Imperial Chemical/ICI Canada's motion to join. The district court granted the motion and dismissed the action as to all defendants. Plaintiffs appeal.

**ANALYSIS**

We review de novo a Federal Rule of Civil Procedure 12(b)(6) dismissal for failure to state a claim upon which relief may be granted, accepting as true all the well-pleaded facts of the complaint and construing them in the light most favorable to the plaintiff. See Bauchman v. West High School, 132 F.3d 542, 550

- 13 -

(10th Cir. 1997), cert. denied , 118 S. Ct. 2370 (1998). We will uphold a Rule 12(b)(6) dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson , 355 U.S. 41, 45-46 (1957). Plaintiffs may not rely on arguments extending beyond the allegations of the complaint to overcome pleading deficiencies; rather, the "complaint itself" must show that plaintiffs are entitled to relief. Bauchman , 132 F.3d at 550.

In a diversity case a federal court must apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Electric Mfg. Co. , 313 U.S. 487, 496 (1941). In torts cases, Oklahoma applies the "most significant relationship" test stated in § 145 of the Restatement (Second) of Conflict of Laws. See Beard v. Viene , 826 P.2d 990, 995 (Okla. 1992); Brickner v. Gooden , 525 P.2d 632, 637 (Okla. 1974). Under this test, we conclude that Oklahoma courts would apply Oklahoma law to the claims in this case.

## I. Negligence

Plaintiffs allege that ICI was negligent in making explosive-grade AN available to the perpetrators of the Murrah Building bombing. Under Oklahoma law, the three essential elements of a claim of negligence are: "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the

- 14 -

defendant's breach." Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997).

The district court held that ICI did not have a duty to protect plaintiffs and that

ICI's actions or inactions were not the proximate cause of plaintiffs' injuries.

Although causation is generally a question of fact, "the question becomes an issue

of law when there is no evidence from which a jury could reasonably find the

required proximate, causal nexus between the careless act and the resulting

injuries," Henry v. Merck and Co., 877 F.2d 1489, 1495 (10th Cir. 1989).

Because we determine that there is a failure of causation as a matter of law, we

need not discuss whether under Oklahoma law defendants owed plaintiffs a duty

of care.

"[W]hether the complained of negligence is the proximate cause of the

plaintiff's injury is dependent upon the harm (for which compensation is being

sought) being the result of both the natural and probable consequences of the

primary negligence." Lockhart, 943 P.2d at 1079 (emphasis omitted).  Under

Oklahoma law, "the causal nexus between an act of negligence and the resulting

injury will be deemed broken with the intervention of a new, independent and

efficient cause which was neither anticipated nor reasonably foreseeable." Minor

v. Zidell Trust, 618 P.2d 392, 394 (Okla. 1980).  Such an intervening cause is

known as a "supervening cause." Id.  To be considered a supervening cause, an

intervening cause must be:  (1) independent of the original act; (2) adequate by

itself to bring about the injury; and (3) not reasonably foreseeable. See id.; Henry, 877 F.2d at 1495. "When the intervening act is intentionally tortious or criminal, it is more likely to be considered independent." Id.

"A third person's intentional tort is a supervening cause of the harm that results – even if the actor's negligent conduct created a situation that presented the opportunity for the tort to be committed – unless the actor realizes or should realize the likelihood that the third person might commit the tortious act." Lockhart, 943 P.2d at 1080 (quotation and emphasis omitted). If "the intervening act is a reasonably foreseeable consequence of the primary negligence, the original wrongdoer will not be relieved of liability." Id. at 1079 (emphasis omitted). "In determining questions relating to the foreseeability element of proximate cause, the courts have uniformly applied what might be termed a practical, common sense test, the test of common experience." 57A Am. Jur. 2d Negligence § 489 (1989).

Oklahoma has looked to the Restatement (Second) of Torts § 448 for assistance in determining whether the intentional actions of a third party constitute a supervening cause of harm. See Lay v. Dworman, 732 P.2d 455, 458-59 (Okla. 1987). Section 448 states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless

- 16 -

the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Comment b to § 448 provides further guidance in the case before us. It states:

There are certain situations which are commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield. So too, there are situations which create temptations to which no considerable percentage of ordinary mankind is likely to yield but which, if they are created at a place where persons of peculiarly vicious type are likely to be, should be recognized as likely to lead to the commission of fairly definite types of crime. If the situation which the actor should realize that his negligent conduct might create is of either of these two sorts, an intentionally criminal or tortious act of the third person is not a superseding cause which relieves the actor from liability.[2]

Thus, under comment b, the criminal acts of a third party may be foreseeable if (1) the situation provides a temptation to which a "recognizable percentage" of persons would yield, or (2) the temptation is created at a place where "persons of a peculiarly vicious type are likely to be." There is no indication that a peculiarly vicious type of person is likely to frequent the Mid-Kansas Co-op, so we shall turn our attention to the first alternative.

We have found no guidance as to the meaning of the term "recognizable percentage" as used in § 448, comment b. However, we believe that the term does not require a showing that the mainstream population or the majority would

---

[2] See also Restatement (Second) of Torts, § 442 for considerations important in determining whether an intervening force is a superseding cause.

yield to a particular temptation; a lesser number will do. Equally, it does not include merely the law-abiding population. In contrast, we also believe that the term is not satisfied by pointing to the existence of a small fringe group or the occasional irrational individual, even though it is foreseeable generally that such groups and individuals will exist.

We note that plaintiffs can point to very few occasions of successful terrorist actions using ammonium nitrate, in fact only two instances in the last twenty-eight years – a 1970 bombing at the University of Wisconsin-Madison and the bombing of the Murrah Building.[3] Due to the apparent complexity of manufacturing an ammonium nitrate bomb, including the difficulty of acquiring the correct ingredients (many of which are not widely available), mixing them properly, and triggering the resulting bomb, only a small number of persons would be able to carry out a crime such as the bombing of the Murrah Building. We simply do not believe that this is a group which rises to the level of a "recognizable percentage" of the population. Cf. Restatement (Second) of Torts § 302B, cmt. d (1965) ("Even where there is a recognizable possibility of the intentional interference, the possibility may be so slight, or there may be so slight

---

[3] In the complaint, Plaintiffs allege in a general way the detonation of AN fertilizer bombs in "Europe and especially Northern Ireland" prior to 1970 and the unsuccessful attempt in the United States to use AN to bomb certain facilities in New York.

- 18 -

a risk of foreseeable harm to another as a result of the interference, that a reasonable man in the position of the actor would disregard it.").

As a result, we hold that as a matter of law it was not foreseeable to defendants that the AN that they distributed to the Mid-Kansas Co-op would be put to such a use as to blow up the Murrah Building. Because the conduct of the bomber or bombers was unforeseeable, independent of the acts of defendants, and adequate by itself to bring about plaintiffs' injuries, the criminal activities of the bomber or bombers acted as the supervening cause of plaintiffs' injuries. Because of the lack of proximate cause, plaintiffs have failed to state a claim for negligence.

## II. Negligence per se

Plaintiffs contend that ICI was negligent per se by violating federal and state laws and regulations regarding the sale of explosives.[4] Specifically, they allege that ICI failed to comply with 18 U.S.C.

---

[4] The AN at issue was sold in Kansas, so the state laws that plaintiffs identify as having been violated are Kansas laws. We accept for the purposes of argument that plaintiffs can base an Oklahoma negligence per se claim on the violation of another state's laws.

§§ 842(e)[5] & (f) [6] and Kan. Stat. Ann. §§ 31-133(a)     [7] & 21-4207 [8] by distributing

---

[5] 18 U.S.C. § 842(e) provides:

It shall be unlawful for any licensee knowingly to distribute any explosive materials, to any person in any State where the purchase, possession, or use by such person of such explosive materials would be in violation of any State law or any published ordinance applicable at the place of distribution.

[6] 18 U.S.C. § 842(f) provides:

It shall be unlawful for any licensee or permittee willfully to manufacture, import, purchase, distribute, or receive explosive materials without making such records as the Secretary may by regulation require, including, but not limited to, a statement of the intended use, the name, date, place of birth, social security number or taxpayer identification number, and place of residence of any natural person to whom explosive materials are distributed.

[7] Kan. Stat. Ann. § 31-133 provides in pertinent part:

**31-133. Fire safety and prevention; rules and regulations for safeguarding life and property from fire and explosion; mandatory requirements; incorporation by reference of certain codes; continuation in service of certain facilities.**  (a) The state fire marshal shall adopt reasonable rules and regulations, consistent with the provisions of this act, for the safeguarding of life and property from the hazards of fire and explosion. Such rules and regulations shall include, but not be limited to the following:
    (1) The keeping, storage, use, sale, handling, transportation or other disposition of highly flammable materials, including crude petroleum or any of its products, natural gas for use in motor vehicles, and of explosives, including gunpowder, dynamite, fireworks and firecrackers; and any such rules and regulations may prescribe the materials and construction of receptacles and buildings to be used for any of such purposes . . .

[8] Kan. Stat. Ann. § 21-4207 provides:

(continued...)

the AN to Farmland and Mid-Kansas without ascertaining that they possessed

permits to receive it and by failing to register the AN. The district court held that

plaintiffs had failed to allege that the AN distributed to Farmland and Mid-Kansas

was covered by the statutes at issue, that plaintiffs cannot show that any violation

of the statutes was the proximate cause of their injuries, and that these plaintiffs

were not part of the class intended to be protected by the Kansas statutes.

In a negligence action, defendant's conduct is to be measured against the

conduct "of a reasonably prudent person under the same or similar

circumstances." Busby v. Quail Creek Golf and Country Club, 885 P.2d 1326,

1329 (Okla. 1994). When conduct is governed by statute or regulation, courts may

adopt the conduct required by the statute or regulation as the standard required of

---

[8](...continued)
**21-4207. Failure to register sale of explosives.** (a) Failure to register sale of explosives is the omission, by the seller of any explosive or detonating substance, to keep a register of every sale or other disposition of such explosives made by the seller as required by this section.

(b) The register of sales required by this section shall contain the date of the sale or other disposition, the name, address, age and occupation of the person to whom the explosive is sold or delivered, the kind and amount of explosive delivered, the place at which it is to be used and for what purpose it is to be used. Such register and record of sale or other disposition shall be open for inspection by any law enforcement officer, mine inspector or fire marshal of this state for a period of not less than one year after the sale or other disposition.

(c) Failure to register sale of explosives is a class B nonperson misdemeanor.

a reasonably prudent person provided courts believe the statutorily required conduct is appropriate for establishing civil liability. See id.; Mansfield v. Circle K. Corp., 877 P.2d 1130, 1132 (Okla. 1994). In this situation, violation of the statute is called "negligence per se." The violation of a statute constitutes negligence per se only if the other elements of negligence are present. See Busby, 885 P.2d at 1329; Mansfield, 877 P.2d at 1132. "To establish negligence per se on the basis of a statutory violation the party must establish that: 1) the injury was caused by the violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute." Mansfield, 877 P.2d at 1132-33.

As to Kan. Stat. Ann. § 31-133, the district court concluded that the complaint contained insufficient particularized allegations that AN is "explosive" material. The definition of "explosive" under Kan. Stat. Ann. § 31-133 requires a circuitous and torturous route through Kansas Administrative Regulations, National Fire Protection Association pamphlets, Federal Regulations, and United Nations manuals. Kan. Stat. Ann. § 31-133 authorizes the state fire marshal to adopt "reasonable rules and regulations" to safeguard "life and property from the hazards of fire and explosion." Pursuant to this authority, the state fire marshal promulgated Kan. Admin. Regs. 22-1-3(v) which adopted by reference, with limited exceptions, National Fire Protection Association ("NFPA") Pamphlet 495

- 22 -

entitled Explosive Materials Code. NFPA Pamphlet 495's definition of the term "explosive" incorporates by reference "any material classified as an explosive by the Hazardous Materials Regulations of the U.S. Department of Transportation." NFPA Pamphlet 495: Explosive Materials Code 6 (1992). In turn, the Hazardous Materials Regulations include a lengthy Hazardous Materials Table ("Table") that designates the hazard class or division of listed materials. See 49 C.F.R. § 172.101. The Table designates AN "with more than .2 percent combustible substances, including any organic substances calculated as carbon, to the exclusion of any other added substance" as an explosive material. Id. On the other hand, the Table designates AN with less than .2 percent combustible substances to the exclusion of any other added substance as oxidizer material. Id.

The district court believed that plaintiffs' pleadings failed for being too generalized and for not alleging that the AN at issue contained more than .2 percent combustible substances. We do note, however, that plaintiffs unequivocally alleged that AN was "explosive grade." Given standard rules of construction governing motions to dismiss that require us to construe well-pleaded facts in the light most favorable to the plaintiff, see Bauchman v. West High School, 132 F.3d at 550, we are not persuaded that plaintiffs' complaint should be disregarded as conclusory.

With regard to Kan. Stat. Ann. § 21-4207, we are more inclined to find, as the district court did, that the complaint fails to allege AN was explosive material covered by that statute. Plaintiffs do not allege a violation of § 21-4207 because the substance at issue – AN sold as fertilizer – does not come within the term "explosives" as used in the statute. In Kan. Stat. Ann. § 21-4209b, the Kansas legislature defines the term "explosives" for purposes of Kan. Stat. Ann. §§ 21-4209 and 21-4209a as "any chemical compound, mixture or device, of which <u>the primary purpose</u> is to function by explosion, and includes but is not limited to dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord and igniters" (emphasis added). We see no reason why this definition of "explosives" would not apply equally well to § 21-4207, which is found within the same section of the Kansas Statutes Annotated as §§ 21-4209 and 21-4209a.[9] Under this definition, the AN at issue, as sold by ICI, does not qualify as an "explosive," because its primary purpose is not to function by explosion but to act as a fertilizer.

_____

[9] We are not persuaded that the administrative adoption of a broader definition of "explosives," in the context of implementing Kan. Stat. Ann. § 31-133, replaces the specific statutory definition of "explosives" found in the section of the statutes in which § 21-4207 is located.

However, even assuming for purposes of this argument that the AN at issue comes within one or both Kansas definitions of "explosives" and is thereby covered by § 31-133 and/or § 21-4207, we do not believe that plaintiffs can establish another element of a negligence _per se_ case – that any violation of § 31-133 or § 21-4207 by these defendants caused their injury. _See also_, W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 36, at 224 (5th ed. 1984) (in a negligence _per se_ case, "[w]hat the statute does, or does not do, is to condition the legality of the act, and to qualify or characterize it as negligent. Upon cause and effect it has no bearing at all."). As we have already explained, causation poses an insurmountable barrier to plaintiffs' recovery. We deem the causal nexus between the defendants' alleged violations of Kansas statutes and the resulting injuries broken with the intervention of a supervening cause – the unforeseeable, nearly unprecedented, criminal bombing of the Murrah Building. Absent proximate cause there can be no negligence, _per se_ or otherwise.

Finally, with the federal statutes, plaintiffs attempt to adopt the materials they filed in the district court rather than setting forth in their appellate brief their quarrel with the district court's reasoning. Like other circuit courts, we do not consider this acceptable argument. _See_ _Toney v. Gammon_, 79 F.3d 693, 696 n.1 (8th Cir. 1996); _Gilday v. Callahan_, 59 F.3d 257, 273 n.23 (1st Cir. 1995); _Cray Commun., Inc. v. Novatel Computer Sys., Inc._, 33 F.3d 390, 396 n.6 (4th Cir.

- 25 -

1994); <u>Yohey v. Collins</u>, 985 F.2d 222, 224-25 (5th Cir. 1993); <u>Hunter v. Allis-Chalmers Corp.</u>, 797 F.2d 1417, 1430 (7th Cir. 1986); <u>see also</u> 16A Charles Alan Wright <u>et al.</u>, <u>Federal Practice & Procedure</u> § 3974.5, at 501-02 (2d ed. 1996); Fed. R. App. P. 28(a)(6). Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules, <u>see</u> Fed. R. App. P. 28(g); 10th Cir. R. 28.3, and unnecessarily complicate the task of an appellate judge. Consequently, we adhere to our rule that arguments not set forth fully in the opening brief are waived, <u>see, e.g.,</u> <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 679 (10th Cir. 1998); <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1547 (10th Cir. 1995), and decline to address whether the district court erred in determining that ICI's AN is not regulated by 18 U.S.C. §§ 842(e) & (f).

### III. Manufacturers' products liability

Plaintiffs assert that ICI is strictly liable for manufacturing a defective product. We read their complaint as alleging both that the AN was defectively designed because, as designed, it was more likely to provide explosive force than an alternative formula, and that ICI failed to issue adequate warnings to Mid-Kansas that the AN was explosive grade rather than fertilizer grade so that Mid-Kansas could take appropriate precautions in selling the AN.

"In Oklahoma, a party proceeding under a strict products liability theory – referred to as manufacturer's products liability – must establish three elements: (1) that the product was the cause of the injury, (2) that the defect existed in the product at the time it left the manufacturer, retailer, or supplier's control, and (3) that the defect made the product unreasonably dangerous." Daniel v. Ben E. Keith Co. , 97 F.3d 1329, 1332 (10th Cir. 1996) (citing Kirkland v. General Motors Corp. , 521 P.2d 1353, 1363 (Okla. 1974)). "Unreasonably dangerous" means "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Kirkland , 521 P.2d at 1362-63; see also Restatement (Second) of Torts § 402A cmt. I (1965). A product may be unreasonably dangerous because it is defectively designed or manufactured, or because it is not accompanied by the proper warnings regarding use of the product. See Holt v. Deere & Co. , 24 F.3d 1289, 1292 (10th Cir. 1994); Attocknie v. Carpenter Mfg., Inc. , 901 P.2d 221, 227 (Okla. Ct. App. 1995) .

As the basis of their defective design claim plaintiffs contend that ICI could have made the AN safer by using an alternate formulation or incorporating additives to prevent the AN from detonating. Plaintiffs' suggestion that the availability of alternative formulas renders ICI strictly liable for its product contradicts Oklahoma law. "Apparently, the plaintiff would hold the

- 27 -

manufacturer responsible if his product is not as safe as some other product on the market. That is not the test in these cases. Only when a defect in the product renders it less safe than expected by the ordinary consumer will the manufacturer be held responsible." Lamke v. Futorian Corp., 709 P.2d 684, 686 (Okla. 1985); see also Woods v. Fruehauf Trailer Corp., 765 P.2d 770, 775 (Okla. 1988) ("[T]he evidence that the tank could have been made 'safer' does not establish that it was less safe than would be expected by the ordinary consumer."); Armijo v. Ex Cam, Inc., 656 F. Supp. 771, 773 (D. N.M. Feb. 6, 1987) ("The mere fact that a product is capable of being misused to criminal ends does not render the product defective."), aff'd, 843 F.2d 406, 407 (10th Cir. 1988). The "ordinary consumer" is "one who would be foreseeably expected to purchase the product involved." Woods, 765 P.2d at 774. As plaintiffs acknowledge, the ordinary consumer of AN branded as fertilizer is a farmer. There is no indication that ICI's AN was less safe than would be expected by a farmer. [10] See Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284, 286 (Okla. 1992) ("A product is not defective when it is safe for normal handling and consumption . . . .").

---

[10] We recognize that Oklahoma has indicated that manufacturers' products liability principles extend to protect bystanders. See Moss v. Polyco, Inc., 522 P.2d 622, 626 (Okla. 1974). The bystander plaintiff, however, must still prove that the product was less safe than expected by an "ordinary consumer" of the product. See Karns v. Emerson Elec. Co., 817 F.2d 1452, 1457 (10th Cir. 1987) (interpreting Oklahoma law).

Similarly, plaintiffs have failed to state a claim regarding ICI's alleged failure to warn Mid-Kansas that the AN was explosive grade rather than fertilizer grade. "Under Oklahoma law, a manufacturer may have a duty to warn consumers of potential hazards which occur from the use of its product." Rohrbaugh v. Owens-Corning Fiberglas Corp., 965 F.2d 844, 846 (10th Cir. 1992) (citing McKee v. Moore, 648 P.2d 21, 23 (Okla. 1982)). If the manufacturer does not fulfill this duty, the product may be unreasonably dangerous. See Karns v. Emerson Elec. Co., 817 F.2d 1452, 1457 (10th Cir. 1987); Steele v. Daisy Mfg. Co., 743 P.2d 1107, 1108-09 (Okla. Ct. App. 1987); Smith v. United States Gypsum Co., 612 P.2d 251, 253-54 (Okla. 1980). Interpreting Oklahoma law, this court has held that the duty to warn extends only to "ordinary consumers and users of the products." See Rohrbaugh, 965 F.2d at 846; see also Woods, 765 P.2d at 774. Under this rationale, defendants had no duty to warn the suppliers of its product of possible criminal misuse. See Port Authority of N.Y. and N.J. v. Arcadian Corp., 991 F. Supp. 390, 408-10 (D. N.J. Dec. 19, 1997) (under New York and New Jersey law, manufacturers of ammonium nitrate had no duty to warn distributors, retailers, dealers, or other suppliers of possibility that product could be criminally misused).

## IV. Remaining Issues

In their opening brief, plaintiffs did not argue why we should reverse the dismissal of their claims for negligent entrustment, negligent infliction of emotional distress, intentional infliction of emotional distress, ultrahazardous or abnormally dangerous activity, or fraud and deceit. Instead, at the end of their brief plaintiffs attempt to adopt all arguments made in the district court for any issues they did not specifically address on appeal. As we have discussed, adopting arguments made in trial court filings is not acceptable appellate argument. Consequently, we consider plaintiffs' objections to the district court's rulings on these issues to be waived.

## CONCLUSION

We AFFIRM the dismissal of plaintiffs' complaint for failure to state a claim upon which relief may be granted.