**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN C. FOLEY,

      Plaintiff-Appellant,

v.

ASPEN SKI LODGE LIMITED
PARTNERSHIP, a Colorado limited
partnership; DAVID McLELLAN,

      Defendants-Appellees.

No. 98-1010
(District of Colorado)
(D.C. No. 95-WY-3276-WD)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK,** and **MURPHY**, Circuit Judges.

      Plaintiff, John A. Foley, appeals the district court's grant of summary

judgment to Defendants, Aspen Ski Lodge Limited Partnership and David

McLellan.  This court has jurisdiction over this appeal from a final judgment

pursuant to 28 U.S.C. § 1291.  After examining the briefs of the parties and the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

entire record on appeal, this court **affirms** the grant of summary judgment and **affirms** the denial of Foley's two post-judgment motions.

I.    FACTUAL BACKGROUND

In 1987, a group of investors (the "Schultz Group") acquired an option to purchase real property and improvements thereon located in Aspen, Colorado. Pursuant to a partnership agreement dated 1988 (the "Partnership Agreement"),[1] a Colorado limited partnership known as Aspen Ski Lodge Limited Partnership ("Aspen") was formed for the purpose of acquiring and managing the Colorado property. The Partnership Agreement named Mountain Bend Real Estate, Inc. ("MBRE"), a Colorado corporation formed by the Schultz Group, as the general partner of Aspen. The Schultz Group successfully solicited numerous investors to participate in Aspen, enabling Aspen to purchase the Colorado property in 1988.

Amid allegations that it had diverted Aspen's assets for its own use, MBRE was removed as general partner of Aspen by a vote of the limited partners in September 1990. Pinecrest, Inc., a Delaware corporation ("Pinecrest"), was named as successor general partner of Aspen. Defendant, David McLellen, is a

---

[1]Neither party has provided this court with a signed or dated Partnership Agreement. However, both parties treat an unsigned and undated Partnership Agreement that simply bears the date "1988" as the agreement that established Aspen and governed its operations. This court will similarly treat that agreement.

principal and shareholder of Pinecrest. MBRE became a "special limited partner" in Aspen pursuant to section 9(d) of the Partnership Agreement. [2]

In 1994, as part of a financial restructuring, Aspen transferred all of its operational assets and liabilities, including its interest in the Colorado property, to Aspen's Molly Gibson Lodge, LLC (the "LLC") in exchange for a 49.8% membership interest in the LLC.

On February 10, 1995, MBRE executed a document in which it assigned all of its undivided rights, title, and interest in and to its special limited partnership interest and any other interest it had in Aspen, to First South Western Financial Services ("South Western"). South Western subsequently assigned to plaintiff, John Foley, the interest in Aspen assigned to it. Both before and after acquiring South Western's interest, Foley sent numerous letters and facsimile transmissions to Aspen and defendant McLellen seeking information about Aspen. When

---

[2]Section 9(d) provides:

> No removal or replacement of the General Partner, however, shall have any effect upon the General Partner's capital interest and allocations of revenues and expenses as provided herein without the General Partner's written consent, but shall merely terminate the General Partner's authority and management rights as the general partner of a limited partnership. In the event of such removal, the removed General Partner shall be deemed to be a special Limited Partner, having all the rights and liabilities of all Limited Partners hereunder but retaining the same capital interest and allocations as herein specified for the General Partner.

Foley's inquiries were not answered, he filed a lawsuit against Defendants in the United States District Court for the District of Colorado. In his complaint, Foley brought two claims for relief. The first claim asserted that Foley was entitled, under the Colorado Uniform Limited Partnership Act, to an accounting of all partnership matters. In the second, Foley claimed he was entitled to distributions from Aspen in an amount in excess of $150,000.00.

Defendants filed a motion for summary judgment which was granted by the district court. Foley then filed two post-judgment motions. One motion was styled as a "Motion for Reconsideration of Order Granting Summary Judgment." The other was a "Motion to Alter or Amend Order Granting Defendant's [sic] Summary Judgment." Both motions were denied by the district court. Foley then filed this appeal.

II    DISCUSSION

*A.    Standard of Review*

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The factual record and any reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). When no material issues of fact are in dispute, this court determines

whether the district court correctly applied the substantive law. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). The district court's legal conclusions are reviewed *de novo*. *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290-91 (10th Cir. 1999).

Within ten days of the grant of summary judgment in favor of Defendants, Foley filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. This motion was denied by the district court. This court reviews the denial of a Rule 59(e) motion for an abuse of discretion. *See Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994). Foley also filed a motion entitled "Motion for Reconsideration of Order Granting Summary Judgment." The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. A party seeking relief from a judgment must either file a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, or a motion seeking relief from a judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Because Foley did not allege any situation covered by Rule 60(b) in his motion for reconsideration, this court will construe that motion as a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, and will review the district court's denial of the motion for an abuse of discretion. *See id*.

*B. Foley's Right to Receive an Accounting*

The district court first determined that section 8 of the Partnership Agreement governed the assignment of MBRE's interest to Foley. Section 8 reads, in pertinent part, "[U]nless the assigning Limited Partner so provided in the instrument of assignment and unless the General Partner consents, which consent may be withheld in the sole discretion of the General Partner, the assignee shall not become a substituted Limited Partner." Under Colorado law, mere assignees are not entitled to partnership accountings. *See* Colo. Rev. Stat. § 7-61-120(3) ("An assignee who does not become a substituted limited partner has no right to require any information or accounting of the partnership transactions or to inspect the partnership books."). The district court, relying on the undisputed fact that Pinecrest had not consented to the admission of Foley as a substituted limited partner, concluded that Foley was merely an assignee [3] of MBRE's special limited partnership interest and, therefore, was not entitled to receive an accounting. The district court then specifically considered and rejected Foley's arguments that the consent requirement found in section 8 of the Partnership Agreement should be overlooked on the grounds of the implied covenant of good faith and fair dealing or estoppel.

---

[3]For purposes of their motion for summary judgment, Defendants assumed, but did not concede, the validity of the assignment to Foley.

In his appeal, Foley first asserts that the assignment of MBRE's interest to him is governed by section 9 of the Partnership Agreement, a section that governs the transfer of a general partner's interest. He then argues that because he complied with the requirements of section 9, he became a special limited partner in Aspen as a result of the assignment. The argument that the assignment is governed by section 9 of the Partnership Agreement is wholly without merit and was adequately and properly addressed and disposed of by the district court.

Foley makes several arguments in support of his alternative position that, even as a mere assignee, he is entitled to an accounting. Foley's argument that the assignee of a partnership interest possesses the same right to receive an accounting as the partner from whom he obtained his assigned interest is meritless and is directly contrary to controlling statutory authority. *See id*.

Foley also asks this court to ignore the plain language of the Partnership Agreement and Colorado law and use its equitable powers to require Defendants to provide him with an accounting. Foley's equitable arguments, based on an implied covenant of good faith and fair dealing or estoppel, were addressed by the district court. The district court rejected Foley's claim that Pinecrest should be deemed to have consented to his admission as a substitute limited partner because Pinecrest has offered no good faith basis for withholding its consent. The court concluded that the Partnership Agreement clearly gave the general

partner absolute discretion in deciding whether to accept or reject an assignee as a substituted limited partner. *See Wells Fargo Realty Advisors Funding, Inc., v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. Ct. App. 1994) ("[T]he duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions."). Likewise, the district court concluded that Foley's estoppel claim failed because Foley had not demonstrated that Defendants had any duty to provide him with information. *See Bolz v. Security Mut. Life Ins. Co.*, 721 P.2d 1216, 1219 (Colo. Ct. App. 1986) ("Estoppel requires that a person, by his words or conduct, *or by his silence when he has a duty to speak*, induce another to change his position detrimentally in reasonable reliance thereon." (emphasis added)). We conclude that the district court properly disposed of both of Foley's equitable claims. [4]

---

[4]In his appeal, Foley also raises the equitable argument that he is entitled to an accounting because without an accounting he is unable to determine either the value of the partnership interest assigned to him or how much, if any, money is owed to him by Aspen. *See Andrikopoulos v. Broadmoor Mgm't Co.*, 670 P.2d 435, 440 (Colo. Ct. App. 1983). Although Foley's claim is related to the equitable claims he raised before the district court, it is a new legal theory not presented to the district court and this court will not consider it for the first time on appeal. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1257 (10th Cir. 1999) ("We will not consider an appellant's new legal theory on appeal, even if it falls under the same general category as an argument presented at trial." (quotation omitted)).

*C. Foley's Right to Receive a Distribution from Aspen*

Foley also appeals the district court's decision that he is not entitled to a distribution of proceeds from what Foley characterizes as the "sale" of Aspen to the LLC. [5] Section 10(c)(iii) of the Partnership Agreement directs that Aspen "shall be dissolved and terminated" upon "[t]he sale of all or substantially all of the assets of the Partnership." In the event Aspen is terminated, section 11 of the Partnership Agreement requires that Aspen's assets be liquidated and the proceeds from that liquidation distributed to the partners. Foley argues that the transfer of Aspen's assets to the LLC triggered the dissolution and termination of Aspen. Section 10(c)(iii) of the Partnership Agreement, however, also provides that "the sale of the assets of the Partnership to a corporation organized solely for the purposes of continuing the business of the Partnership in exchange for the corporation's capital stock under paragraph 13(b) shall not be deemed the sale of all or substantially all of the assets of the Partnership for purposes of this Paragraph 19(c)(iii) [sic]."

---

[5]Foley argued before the district court that he is entitled to a property management fee from Aspen under section 9(d) of the Partnership Agreement. In his opening brief, Foley does not challenge the district court's conclusion that he is not entitled to this management fee. His right to appeal this issue is, therefore, waived. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623 (10th Cir.1998) (arguments not raised in opening brief are waived).

The district court noted that the undisputed facts reveal that Aspen did not treat the transfer of its assets to the LLC as a sale or disposition of Aspen's assets. [6] The district court concluded that the transfer of assets from Aspen to the LLC was conducted pursuant to the exception found in section 10(c)(iii) of the Partnership Agreement and, therefore, did not constitute a sale or dissolution of Aspen that triggered the dissolution and termination of the partnership. Based on this conclusion, the district court ruled that Foley was not entitled to any distribution of proceeds from the transfer of Aspen's assets to the LLC.

During oral argument, Foley raised for the first time the argument that the transfer to the LLC does not fall under the exception detailed in section 10(c)(iii) of the Partnership Agreement because the transfer was to a limited liability company and not a corporation. Although Foley's argument may have merit, he did not raise it before the district court and this court will not consider it for the first time on appeal. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1230 (10th Cir. 1999) ("This court does not address issues that were not properly raised before the district court."). Based on the arguments presented to and considered by the

_____

[6]Although Foley, on appeal, challenges the admissibility of the evidence on this issue introduced by Defendants in support of their motion for summary judgment, Foley has waived this issue by not raising it before the district court. *See Crow v. Shalala,* 40 F.3d 323, 324 (10th Cir.1994).

district court, that court properly rejected Foley's claim that he is entitled to a distribution of proceeds from the transfer of Aspen's assets to the LLC.

D.    *Foley's Post-Judgment Motions*

Foley filed two post-judgment motions. In these motions, Foley requested the district court to reconsider its rulings on his two claims. Foley also asked the district court to rule on his purported claim for declaratory relief and to clarify whether he has a valid assignment of MBRE's partnership interest entitling him to future distributions from Aspen. The district court denied both of Foley's post-judgment motions.

In this appeal, Foley argues that the district court erred by failing to address his claim for declaratory relief. A review of Foley's complaint fails to reveal the existence of a claim for declaratory relief. Although Foley included such a claim in the pretrial order, the pretrial order also includes an objection by Defendants to the addition of any such claim. A party can only amend his pleading by leave of court or by written consent of the adverse party. *See* Fed. R. Civ. P. 15(e). In light of their objection in the pretrial order, Defendants clearly did not consent to the amendment of Foley's complaint to add a claim for declaratory relief. Additionally, the record contains no formal motion to amend the complaint and, therefore, it is equally clear that Foley never sought leave of the court to amend his complaint to add such a claim. *Cf. Lowell Staats Mining*

*Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1261 (10th Cir. 1989).

Notwithstanding the language contained in the pretrial order, Foley's complaint was not properly amended to include a claim for declaratory relief and, therefore, the claim was not properly before the district court.

The district court's order granting summary judgment contains no reference to Foley's purported claim for declaratory relief. Thus, it is clear that Foley's claim for declaratory relief was not considered by the district court when it ruled on Defendants' motion for summary judgment. When the district court denied Foley's post-judgment motions, the court stated, "The Court's findings, based on the undisputed facts of this case, adequately address and resolve *the claims presented* and *all claims which were properly before the Court*." The only issues presented to the district court, and the only issues addressed by the district court, were whether Foley was entitled to an accounting from Aspen and whether Foley had the right to receive a distribution of proceeds, if any, resulting from the transfer of Aspen's assets to the LLC. [7]

---

[7]We further note that a ruling by the district court on a claim for declaratory relief would necessarily require the court to first rule on the validity of the assignment to Foley. The following language from the district court's order granting summary judgment unequivocally indicates that the court was not ruling on the validity of the assignment for purposes of the motion for summary judgment: "For the purposes of this motion, defendant has assumed the validity of the assignment of MBRE's partnership interests to plaintiff."

A review of the record compels the conclusion that Foley did not bring a claim for declaratory relief in his complaint nor did he succeed in amending his complaint to include such a claim. Because it is clear from the record that Foley's claim for declaratory relief was not properly before the Court, it is equally clear that the district court's grant of summary judgment included no adjudication of any such claim. The district court did not abuse its discretion when it denied both of Foley's post-judgment motions.

III    CONCLUSION

Upon de novo review of the parties' appellate briefs, the district court's oral ruling and judgment, and the entire record on appeal, this court **affirms** the grant of summary judgment in favor of Defendants for substantially the reasons set forth in the district court's oral ruling dated December 19, 1996. Additionally, this court **affirms** the district court's denial of Foley's post-judgment Motion for Reconsideration of Order Granting Summary Judgment and Motion to Alter or Amend Order Granting Defendants' Summary Judgment.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

-13-