FILED
United States Court of Appeals
Tenth Circuit

April 27, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

WILLIAM DOUGLAS FULGHUM, et al.,
individually and on behalf of all others
similarly situated,

    Plaintiffs - Appellants,

v.

EMBARQ CORPORATION, et al.,

    Defendants - Appellees.

-------------------------------------------------

SECRETARY OF LABOR,

    Amicus Curiae.

No. 13-3230
(D.C. No. 2:07-CV-02602-EFM)
(D. Kan.)

_____

**ORDER**
_____

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.
_____

This matter is before the court on appellees' *Petition for Rehearing and Rehearing En Banc*, as well as on the appellants' *Petition for Rehearing and Rehearing En Banc*.

We also have responses from the parties to both petitions.

Upon consideration, the requests for panel rehearing are granted to the extent of the amendments made in the attached revised opinion. The clerk is directed to file the new decision effective the date of this order.

Both petitions, the responses, as well as the revised opinion, were also circulated to all of the judges of the court in regular active service who are not recused. As no judge on the panel or the court requested that a poll be called, the requests for en banc rehearing are both denied.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM DOUGLAS FULGHUM; DORSEY DANIEL; JOHN DOUGLAS HOLLINGSWORTH; WILLIE DORMAN; ROBERT E. KING; CALVIN BRUCE JOYNER; TIMOTHY DILLON; SUE BARNES; WILLIAM GAMES; BETSY BULLOCK; KENNETH A. CARPENTER; BETTY A. CARPENTER; CARL W. SOMDAHL; WANDA W. SHIPLEY; LAUDIE COLON McLAURIN, individually and on behalf of all others similarly situated; JAMES W. BRITT, class representative (deceased); CAROL NELSON, Administrator of the Estate of James W. Britt; BESSIE M. REVEAL, proposed substitute named plaintiff and class representative for James W. Britt; DONALD RAY CLARK,

        Plaintiffs - Appellants,

v.

EMBARQ CORPORATION; EMBARQ RETIREE MEDICAL PLAN; SPRINT NEXTEL CORPORATION; EMBARQ MID-ATLANTIC MANAGEMENT SERVICES COMPANY, formerly known as Sprint Mid-Atlantic Telecom, Inc.; SPRINT RETIREE MEDICAL PLAN; GROUP HEALTH PLAN FOR CERTAIN RETIREES AND EMPLOYEES OF SPRINT CORPORATION; SPRINT WELFARE BENEFIT PLAN FOR RETIREES AND NON-FLEXCARE PARTICIPANTS; SPRINT GROUP LIFE AND LONG-TERM DISABILITY PLANS;

No. 13-3230

CAROLINA TELEPHONE AND TELEGRAPH COMPANY, LLC, formerly known as Carolina Telephone and Telegraph Company; GROUP LIFE ACCIDENTAL DEATH AND DISMEMBERMENT AND DEPENDENT LIFE PLAN FOR EMPLOYEES OF CAROLINA TELEPHONE AND TELEGRAPH COMPANY; CAROLINA TELEPHONE AND TELEGRAPH COMPANY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION SICKNESS DEATH BENEFIT PLAN; RANDALL T. PARKER, as Plan Administrator for all of the Employee Welfare Benefit Plans of Embarq Corporation and Carolina Telephone and Telegraph Company, LLC; EMPLOYEE BENEFITS COMMITTEE OF EMBARQ CORPORATION AS PLAN ADMINISTRATOR OF THE EMBARQ RETIREE MEDICAL PLAN,

Defendants - Appellees.

------------------

THOMAS E. PEREZ, Secretary, United States Department of Labor; SECRETARY OF LABOR,

Amicus Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS (D.C. NO. 2:07-CV-02602-EFM)**

Alan M. Sandals, Sandals & Associates, P.C., Philadelphia, Pennsylvania, and Richard T. Seymour, Law Office of Richard T. Seymour, PLLC, Washington, DC (Scott M. Lempert, Sandals & Associates, P.C., Philadelphia, Pennsylvania;

Stewart W. Fisher, Glenn, Mills, Fisher & Mahoney, P.A., Durham, North Carolina; Mary C. O'Connell, Douthit Frets Rouse Gentile & Rhodes, LLC, Kansas City, Missouri; and Diane A. Nygaard, Kenner Nygaard Demarea Kendall, LLC, Kansas City, Missouri, with them on the briefs), for Plaintiffs-Appellants.

Christopher J. Koenigs, Sherman & Howard L.L.C., Denver, Colorado (Joseph J. Costello, Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania, and James P. Walsh, Jr., Morgan, Lewis & Bockius LLP, Princeton, New Jersey, with him on the brief), for Defendants-Appellees.

Stephen A. Silverman, U.S. Department of Labor, Washington, DC (M. Patricia Smith, Solicitor of Labor; G. William Scott, Acting Associate Solicitor, Plan Benefits Security Division; and Nathaniel I. Spiller, Counsel for Appellate and Special Litigation, U.S. Department of Labor, Washington, DC, with him on the brief), for Amicus Curiae.

---

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

Plaintiffs-appellants represent a class of retirees (collectively "Plaintiffs") formerly employed by Sprint-Nextel Corporation ("Sprint"), Embarq Corporation ("Embarq"), or a predecessor and/or subsidiary company of either Embarq or Sprint (collectively "Defendants").  Plaintiffs brought this suit after Defendants altered or eliminated health and life insurance benefits for retirees.  Plaintiffs asserted Defendants (1) violated the Employee Retirement Income Security Act of 1974 ("ERISA") by breaching their contractual obligation to provide vested

- 3 -

health and life insurance benefits; (2) breached their fiduciary duty by misrepresenting the terms of multiple welfare benefit plans; and (3) violated the Age Discrimination in Employment Act ("ADEA") and applicable state laws by reducing or eliminating health and life insurance benefits. Defendants sought summary judgment on the breach of fiduciary duty claims, the ADEA claims, the state-law age discrimination claims, and some of the contractual vesting claims. The district court granted Defendants' motions in part and Plaintiffs obtained a Rule 54(b) certification.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court concludes Defendants did not contractually agree to provide Plaintiffs with lifetime health or life insurance benefits and thus we **affirm in part** the grant of summary judgment as to the contractual vesting claims. To the extent the district court granted summary judgment against class members whose contractual vesting claims arise, in whole or in part, from summary plan descriptions ("SPD"s) other than those identified in Defendants' motion, we **reverse** the grant of summary judgment against those class members. We **reverse** the district court's dismissal of Plaintiffs' breach of fiduciary duty claims to the extent those claims are premised on a fraud theory. Finally, because Defendants' decision to reduce or terminate the group life insurance benefit was based on a reasonable factor other than age, their actions did not violate the ADEA and we **affirm** the grant of summary judgment in favor of Defendants on those claims. We likewise **affirm**

the dismissal of Plaintiffs' ADEA claims involving the reduction or elimination of post-retirement health benefits for Medicare-eligible employees because an agency regulation expressly permits Defendants' actions.

## II.   ERISA Claims

### A.   Background

Seventeen named plaintiffs represent class members whose post-retirement health and life insurance benefits were reduced or eliminated by Defendants. *Fulghum v. Embarq Corp.*, 938 F. Supp. 2d 1090, 1097-99 (D. Kan. 2013).  The class "includes retired employees and their eligible dependents who retired before January 1, 2008 from Embarq or a business that became part of Embarq and who were participating in any of the retiree medical, prescription drug and life insurance benefit plans of Sprint Nextel Corporation and Embarq Corporation." *Id*. at 1099 (quotation omitted).  Defendants include: Sprint (formerly known as United Telecommunications, Inc. and Sprint Corporation), Embarq, Embarq Mid-Atlantic Management Services Company (formerly known as Sprint Mid-Atlantic Telecom, Inc.), Carolina Telephone & Telegraph ("CT&T"), Employee Benefits Committee of Embarq Corporation, and Randall T. Parker.  *Id*.  Welfare benefit plans named as additional defendants include: Embarq Retiree Medical Plan, Sprint Retiree Medical Plan, Group Health Plan for Certain Retirees and Employees of Sprint Corporation, Sprint Welfare Benefit Plan for Retirees and Non-Flexcare Participants, Sprint Group and Long Term Disability Plans, Group

Life Accidental Death and Dismemberment and Dependent Life Plan for Employees of Carolina Telephone and Telegraph Company, and Carolina Telephone and Telegraph Company Voluntary Employees' Beneficiary Association Sickness Death Benefit Plan ("VEBA") (collectively the "Plans"). *Id*.

The actions giving rise to Plaintiffs' claims began in November 2005 when Sprint announced it was modifying prescription drug benefits for retirees eligible for Medicare Part D coverage. *Id*. Effective January 1, 2008, Embarq eliminated "company-sponsored medical coverage and the prescription drug subsidy provided to Medicare-eligible retirees and Medicare-eligible dependents of retirees." *Id*. As to company-provided life insurance for retirees, basic coverage was eliminated for retirees participating in the VEBA plan and was capped at $10,000 for all other class members. *Id*. Plaintiffs filed suit in December 2007, challenging the reduction and/or elimination of their benefits. *Id*. at 1100. Defendants moved for summary judgment in March 2012.[1]

Written SPDs explain the health and life insurance benefits available to the relevant named plaintiffs and class members. In their motions for summary judgment, Defendants organized thirty-two SPDs into five groups based on language and coverage similarities, *id*., asserting the relevant named plaintiffs and

---

[1]Defendants sought summary judgment against seventeen named plaintiffs and selected class members. *Fulghum v. Embarq Corp.*, 938 F. Supp. 2d 1090, 1100 (D. Kan. 2013).

class members retired under an identified SPD or an SPD identical in all material respects to one of the identified SPDs. The district court analyzed Plaintiffs' contractual vesting claims by reference to Defendants' grouping and, on appeal, Plaintiffs do not challenge the district court's approach.[2] Accordingly, this court's analysis will also comport with Defendants' grouping.[3]

### B.      Standard of Review

Plaintiffs' complaint alleges Defendants contractually agreed to provide subsidized health and life insurance benefits to retirees for their lifetimes. Plaintiffs sought, *inter alia*, payment of past-due benefits and a determination of their right to future benefits. *See* 29 U.S.C. § 1132(a)(1)(B), (a)(3). We review the district court's grant of summary judgment in favor of Defendants on these claims de novo. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996), *abrogated on other grounds by CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011).

### C.      Discussion

The plans at issue all provide health or life insurance benefits and, thus, are all welfare benefit plans under ERISA. 29 U.S.C. § 1002(1). Welfare benefit plans are not governed by ERISA's minimum vesting standards and employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or

---

[2]*But see* Section II. E.

[3]The district court's disposition of the claims assigned to Group 5 are not at issue in this appeal.

terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *see also Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228, 1239-40 (10th Cir. 2000). If, however, an employer has contractually agreed to provide retirees with vested benefits, it may not unilaterally modify or terminate the welfare benefit plan that establishes those benefits. *Deboard*, 208 F.3d at 1240.

The interpretation of an ERISA plan is governed by federal common law. *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1237 (10th Cir. 2012). "In deciding whether an ERISA employee welfare benefit plan provides for vested benefits, we apply general principles of contract construction. In particular, the Supreme Court has directed us to interpret an ERISA plan like any contract, by examining its language and determining the intent of the parties to the contract." *Deboard*, 208 F.3d at 1240 (quotation omitted). A plaintiff cannot prove his employer promised vested benefits unless he identifies "clear and express language" in the plan making such a promise. *Chiles*, 95 F.3d at 1513 (quotation omitted). *But see Am. Fed. of Grain Millers v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997) (noting a circuit split on the summary judgment standard for contractual vesting and adopting a lower standard). "[A] promise to provide vested benefits must be incorporated . . . into the formal written ERISA plan. SPDs are considered part of the ERISA plan documents."[4] *Chiles*, 95 F.3d at

---

[4]Neither party has asserted the SPDs conflict with the Plans, contain terms unsupported by the Plans, or contain provisions not authorized by or made part of
(continued...)

1511 (quotation and citation omitted).  Having reviewed the SPDs at issue in this matter, we conclude Plaintiffs cannot show that any plan contains clear and express language promising vested benefits.

*1.      Group 1*

The first group of SPDs ("Group 1") consists of sixteen documents, accurately described by the district court as each containing (1) a statement that a retiree's coverage ends upon her death and (2) a reservation of rights ("ROR") clause pursuant to which the employer reserved the right to amend or terminate the relevant plan at any time.[5]  *Fulghum*, 938 F. Supp. 2d at 1103.  Specifically, all sixteen SPDs include a section entitled, "When Coverage Ends."  Under the subheading, "Retirees," the documents state, in part: "Your coverage under the Retiree Medical Plan ends when you die, or you do not pay your share of the cost of your coverage."  SPDs 5-6 and 24-32 all have additional provisions detailing

_____

[4](...continued)
the Plans.  *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011); *Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1131 (10th Cir. 2011).  Accordingly, we proceed on the assumption "the SPD is part of the Plan." *Horizon*, 663 F.3d at 1131.

[5]The resolution of this appeal was unnecessarily hampered by Plaintiffs' repeated disregard of 10th Cir. R. 28.1(A), which requires them to provide applicable references to the *appendix*.  The Rule is *not* satisfied by referencing documents filed in the district court.  *See Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1256 n.10 (10th Cir. 2003) ("[Appellant's] consistent practice of citing to its own factual assertions in its various legal memoranda filed below, rather than citing to the relevant portions of the record supporting a given factual assertion has seriously delayed the resolution of this appeal.").

life insurance benefits for retirees. SPDs 5, 6, and 24 contain a provision stating: "[B]asic life insurance coverage ends on the date of your death." SPDs 25-27 and 31 state: "Retirees eligible for Basic Life insurance will be covered as of their effective pension date. Coverage ends on the date of death." SPDs 28-30 and 32 state: "Retirees eligible for Basic Life insurance became covered as of their effective pension date. Coverage is offered at no cost to the retiree. Coverage ends on the date of death."

All the SPDs in Group 1 also contain an ROR clause located on one of the introductory pages, stating, in part:[6] "[The relevant company] expects to continue the Retiree Benefits Program indefinitely. However, the Company reserves the right to change or discontinue any or all benefits under this program, or any statement in this summary plan description, at any time." In addition, a section in SPDs 1-4 titled, "What the Plan Covers," states: "Just as medical coverage can change in the future for active employees, so can the coverage that is available to retirees." SPDs 5, 24-27, and 29-31 have a section titled, "Legal Information," which contains language stating the relevant company "reserves the right to amend any part of the Plan, to change the method of providing benefits, or to terminate any or all of the plans." SPDs 5, 6, and 24 all contain provisions stating: "Appendix D explains the life insurance coverage available to retirees. In the future, the company may change or terminate any of the coverages described

_____

[6]The ROR language in SPDs 25-32 differs in an immaterial way.

in this Section." This language immediately precedes the description of the life insurance coverage available to retirees under the relevant plan.

Plaintiffs argue the SPDs in Group 1 are ambiguous because they contain conflicting provisions—one promising lifetime benefits and the other reserving the right to alter or terminate the plan. Plaintiffs argue the plan documents must be construed in their favor to grant lifetime benefits. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009) ("The doctrine of *contra proferentem*, which construes all ambiguities against the drafter, applies to *de novo* review of ERISA plans."). "Whether an ERISA plan term is ambiguous depends on the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." *Foster*, 693 F.3d at 1237 (quotation omitted). Having reviewed the SPDs in Group 1, we conclude they are not ambiguous.

As to the health coverage provided by all the plans in Group 1, the language on which Plaintiffs rely for their vesting argument is found in the section titled, "When Coverage Ends." In part, that section states, "Your coverage under the Retiree Medical Plan ends–when you die, or–you do not pay your share of the cost of your coverage." Plaintiffs argue this section conferred vested medical benefits on plan participants, relying heavily on our opinion in *Deboard* for that proposition.

In *Deboard*, this court concluded a letter distributed to employees in which their employer encouraged them to voluntarily retire early in exchange for "higher vesting rights" created a separate welfare benefit plan. 208 F.3d at 1238-39. The letters specifically stated: "[T]he Plan provides that you and your eligible dependents would be entitled to receive health care under our current group hospitalization plan with Massachusetts Mutual, fully paid for at [the Company's] expense until the time of your death." *Id*. at 1233. This court concluded "the terms of the . . . letters demonstrate an intent on the part of defendants to provide plaintiffs with vested insurance benefits. In particular, the letters unequivocally indicated persons taking advantage of the early retirement plan would be provided with health insurance for their lifetimes, at company expense." *Id*. at 1241.

Unlike the letters mailed to plan participants in *Deboard*, the SPDs in Group 1 do not unequivocally state that medical benefits will continue to be provided to retirees at company expense until the date of the retiree's death. Instead, the statements, "[y]our coverage ends under the Retiree Medical Plan when you die," convey the self-evident message that a retiree's medical coverage terminates when she dies. Further, the purpose of the "When Coverage Ends" section of the SPDs in Group 1 is to detail how the coverage of others, *i.e.*, the retiree's surviving spouse and dependent children, is affected by the retiree's death. Read in context, the language on which Plaintiffs rely does not clearly and

expressly state that health benefits are vested and, thus, it cannot reasonably be interpreted as a promise of lifetime benefits.

We reach the same conclusion as to the life insurance provisions in SPDs 5-6, and 24-32, but for a slightly different reason. The language stating basic life insurance coverage ends on the date of the retiree's death also follows the heading, "When Coverage Ends," but there are no additional provisions detailing the effect the cessation of coverage has on those individuals who survive the retiree. Further, several of the SPDs—those numbered 28, 29, 30, and 32—state that life insurance coverage "is offered at no cost to the retiree." These provisions, however, must be reconciled with the other provisions in the SPDs.[7] *See Foster*, 693 F.3d at 1237 (stating ERISA plan must be examined "as a whole").

Here, each SPD that includes a description of life insurance coverage also contains at least one ROR clause, pursuant to which Defendants expressly and unambiguously reserved the right to "change or discontinue any or all benefits" or to "amend or terminate" the plan. As many of our sister circuits have previously concluded, plan language that arguably promises lifetime benefits can be reconciled with an ROR clause if the promise is interpreted as a qualified one,

---

[7]As to the life insurance benefits, Plaintiffs' comparison of the SPDs in Group 1 to the plan documents in *Deboard* is unavailing. The employer in *Deboard* did not retain the right to alter or terminate plan benefits at any time. *Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228, 1240 (10th Cir. 2000).

- 13 -

subject to the employer's reserved right to amend or terminate those benefits. *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 904 & n.12 (3d Cir. 1995); *UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 704 (7th Cir. 2003); *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 98-99 (2d Cir. 2001); *Spacek v. Maritime Ass'n*, 134 F.3d 283, 293 (5th Cir. 1998) overruled on other grounds by *Cent. Laborers' Pension Fund*, 541 U.S. 739, 743 (2004); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 856 (4th Cir. 1994); *Howe v. Variety Corp.*, 896 F.2d 1107, 1109 (8th Cir. 1990). In other words, when each SPD in Group 1 is read in its entirety, giving effect to all its provisions, it unambiguously explains to retirees that they will continue to receive life insurance benefits unless the terms of the plan are changed prior to their death. Accordingly, the SPDs in Group 1 cannot be interpreted to contain clear and express language promising vested lifetime benefits.

*2.     Group 2*

There are three SPDs in Group 2 and all relate to ERISA plans that provide life insurance benefits to retirees. Having reviewed these SPDs, we conclude no SPD in Group 2 contains "clear and express language" promising vested benefits. *Chiles*, 95 F.3d at 1513.

In their appellate brief, Plaintiffs allude to one provision in the Group 2 SPDs they assert is sufficient to promise vested life insurance benefits. That

provision is found in the section of the SPDs titled, "Benefits For You." Plaintiffs argue this provision promises retirees lifetime benefits because it states a participant's life insurance "will be" the amount equal to their active employee coverage subject only to a 50% reduction "on the fifth anniversary of retirement." Nothing in the provision identified by Plaintiffs, however, could reasonably be construed as a promise of lifetime benefits. The section to which Plaintiffs refer provides plan participants with information regarding the *amount* of the life insurance benefit. It, in no way, speaks to the *duration* of the benefit.

Plaintiffs argue a determination the SPDs do not expressly promise lifetime benefits does not end the inquiry. They assert Defendants lacked the power to unilaterally amend the Group 2 plans, regardless of whether the plan documents contain an express promise of lifetime benefits, because Defendants failed to reserve the right to amend. This argument is derived from our opinion in *Deboard*, in which we stated: "Although ERISA pension plans are subject to mandatory vesting requirements, ERISA employee welfare benefit plans are not subject to such standards, and employers are generally free to amend or terminate these plans unilaterally (*assuming the plan provides for this right*)." 208 F.3d at 1239-40 (emphasis added) (citation omitted).

Plaintiffs note the district court agreed the SPDs in Group 2 "do not contain an express reservation of rights provision." *Fulghum*, 938 F. Supp. 2d at 1109. They argue the Group 2 plans thus cannot be amended in a way that alters or

reduces the benefits described therein.  *See* 29 U.S.C. § 1102(b)(3) (requiring employee benefit plans to "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan").[8]  The SPDs in Group 2, however, provide that insurance under the "Group Policy" ends on "the date the Group Policy terminates."  The SPDs also contain conversion provisions, entitling participants to have individual life insurance policies issued to them if "the Group Policy is terminated or amended so as to terminate the life insurance for the class to which" the participant belongs.  Plaintiffs argue this language, at best, permits Defendants to terminate the policies, not the plans.  The district court disagreed, concluding Plaintiffs failed to show a distinction between the policies and the relevant plans and, thus, they failed to show the termination of the policies would not also result in the termination of the plans.  *See Gable*, 35 F.3d at 856 ("[T]he fact that the modification provision stated that the company may amend the 'Policy' does not limit the company's amendment right, because the [insurance] policy constituted the entirety of the company's welfare benefit plan.").  Accordingly, the district court ruled the SPDs unambiguously permit Defendants to terminate life insurance benefits by terminating the Group Policy.

Plaintiffs argue the district court's analysis is flawed because "the SPDs are not the policies" and "the plan is a separate reporting entity under ERISA."

---

[8]Beginning in 2001, plan amendment provisions are now required to be included in SPDs.  29 C.F.R. § 2520.102-3(1); 65 Fed. Reg. 70226, 70229 (Nov. 21, 2000).  The three plans in Group 2 were all issued before 2001.

Neither of these arguments is responsive to the district court's determination that, under the facts presented here, there is no distinction between the policies and the plans and, thus, termination of the policies would necessarily terminate the plans. Plaintiffs' reliance on *Deboard* for the proposition that the right to change or terminate a particular insurance policy does not equate to the right to change or terminate the plan is also not persuasive. *See* 208 F.3d at 1240. *Deboard* does not state such a proposition. The placement of the provision in *Deboard* made it unlikely the employer was permitted to do anything other than change carriers. Nothing about the placement of the provisions at issue here raises the same suggestion.

Having reviewed the record and considered the arguments of the parties, we agree with the district court that the Group 2 SPDs unambiguously contemplate termination of the plans. The conversion language discussed above specifically states that a participant is "entitled to have an individual life insurance policy issued to" her if the group life insurance "ceases because the Group Policy is terminated or amended so as to terminate the life insurance." Coupled with the provision stating that insurance terminates when the policy terminates, this language demonstrates Defendants had the power to terminate a retiree's group life insurance benefit. Because the life insurance coverage provided by the plans in Group 2 can be terminated or amended and Plaintiffs have failed to identify any "clear and express" language promising lifetime life insurance benefits under

those plans, the district court did not err by granting summary judgment to Defendants on the ERISA claims relating to the plans in Group 2.[9]

### 3.    Group 3

The four ERISA plans in Group 3 are described in SPDs 10, 11, 12, and 19. These plans provide medical benefits to retirees. Plaintiffs argue they are entitled to lifetime benefits under these plans because the SPDs contain provisions stating benefits "will continue after retirement" and that retirees "will be insured." The language to which Plaintiffs refer, however, does not clearly and expressly promise lifetime benefits because it does not state that benefits will continue, unaltered, until the retiree's death. *See Deboard*, 208 F.3d at 1242 (interpreting nearly identical language as not suggesting "an intent on the part of defendants to create vested rights in . . . insurance coverage"). Although Plaintiffs argue the district court considered the language "in isolation and overlooked the other provisions indicating vested benefits," Plaintiffs have not shared those "other provisions" with this court. After locating the sections of the SPDs referenced by Plaintiffs,[10] we have reviewed them in their entirety and conclude the provisions

---

[9]The district court denied summary judgment as to named Plaintiff James Britt because his Group 2 ERISA claims were possibly impacted by a collective bargaining agreement. *Fulghum*, 938 F. Supp. 2d at 1113.

[10]Again, Plaintiffs have failed to provide any meaningful citations to the appendix, requiring this court to comb through the 9661-page record to locate the four relevant documents and, then, review the entirety of each document to locate the referenced language.

address eligibility requirements and the effect of retirement on a plan participant's benefits; they do not promise lifetime benefits.

As with the plans in Group 2, Plaintiffs also argue the benefits provided by the plans in Group 3 could not be altered or terminated because the SPDs do not expressly permit amendment. As to SPD #19, a group health plan covering employees of United Telephone Company of Texas, Inc., page 3 of the SPD contains the following ROR clause: "The Company expects to continue the Plan for the foreseeable future. However, the Company reserves the right to amend, discontinue or terminate the Plan and/or Plan benefits." This clause leaves no doubt the plan could be amended or terminated at any time. Thus, the grant of summary judgment to Defendants as to SPD #19 was proper.

Each remaining SPD in Group 3 contains an ROR clause allowing amendment or termination of the plan "for reasons of business necessity or financial hardship." Plaintiffs assert on appeal that this standard should be read in conformity with Treasury Regulation § 1.401-1(b)(2), which addresses the disqualification of *pension plans* from favorable tax treatment if the plan is amended or terminated "for any reason other than business necessity." Revenue Ruling 69-25 interpreted the term "business necessity," as used in that Treasury Regulation, to mean "adverse business conditions, not within the control of the employer, under which it is not possible to continue the plan." Rev. Rul. 69-25, 1969-1 C.B. 113.

There are multiple reasons why we reject Plaintiffs' argument. First, it was not presented to the district court and, therefore, it is not preserved for appellate review. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). Second, even if the issue had been preserved, Plaintiffs' reliance on Revenue Ruling 69-25 for the definition of "business necessity" is misplaced because "IRS revenue rulings are not binding precedent on this court." *ABC Rentals of San Antonio, Inc. v. Commissioner*, 142 F.3d 1200, 1205 (10th Cir. 1998). "Revenue rulings do not have the force and effect of law, but rather are offered for the guidance of taxpayers, IRS officials, and others concerned . . . ." *True Oil Co. v. Commissioner*, 170 F.3d 1294, 1304 (10th Cir. 1999) (quotation omitted). Further, Revenue Ruling 69-25 addresses pension plans, not welfare benefit plans. Plaintiffs have failed to explain how the analysis of the term "business necessity" in the Revenue Ruling is relevant in the context of welfare benefit plans which, unlike pension plans, can generally be terminated "for any reason at any time." *Curtiss-Wright Corp.,* 514 U.S. at 78. The Revenue Ruling itself states the Treasury Regulations provide "that the term 'plan' implies a permanent . . . program" and, thus, "abandonment of a plan for any reason other than business necessity within a few years after it has taken effect will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general." Rev. Rul 69-25, 1969-1 C.B. 113. No such concerns exist with welfare benefit plans.

In the alternative, Plaintiffs also argue the business necessity standard was not met here because "the company was profitable and the benefits represented a minute portion of operating expenses." In *Chiles*, we concluded an ROR clause permitting the employer to alter or terminate a welfare benefit plan if it became "necessary" gave the employer "almost unlimited discretion . . . to change the plan." 95 F.3d at 1513 (holding the term "'if necessary'" was "not conditioned on any event or circumstance" and thus "its meaning cannot fairly imply . . . that the plans can only be amended if necessary to their fiscal survival"). *Chiles* rejected essentially the same argument Plaintiffs make here. The ROR clauses at issue here are cabined only by the condition that the change in coverage be based on a business decision.

The record shows Defendants' motivation for amending the plans was to avoid duplicating benefits available to retirees through Medicare. It was estimated the changes would reduce Sprint's annual expenses by more than $22 million and Embarq's expenses by more than $21 million. Plaintiffs' only challenge to this evidence is their assertion "the company was profitable and the benefits represented a minute portion of operating expenses."[11] Defendants, however, were not required to show anything other than a business justification

---

[11]Plaintiffs provide a reference to the appendix to support this argument, but that reference leads this court to Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment and not to the section of the appendix actually supporting the proposition. *See supra* n.5 (noting such a practice was specifically condemned in this court's *Ashley Creek* decision).

for the amendments. The evidence in the record is sufficient to meet that burden and the grant of summary judgment was appropriate.

*4. Group 4*

Group 4 consists of seven ERISA plans which are summarized in SPDs 13-15 and 20-23. Plaintiffs generally argue these SPDs promise lifetime benefits to retirees because they contain duration limits for some plan participants but not for retirees. Plaintiffs cannot prevail on this claim because they must identify affirmative language promising lifetime benefits and they have wholly failed to do so. *See Chiles*, 95 F.3d at 1513. Further, according to Plaintiffs, all the SPDs in Group 4 contain ROR clauses permitting Defendants to amend the plans for reasons of business necessity. Because Plaintiffs present no appellate argument that the amendments were not motivated by business reasons, their claims fail and summary judgment in favor of Defendants was appropriate.

*D. Extrinsic Evidence*

Read in context, no reasonable person in the position of a plan participant would have understood any of the language identified by Plaintiffs as a promise of lifetime health or life insurance benefits. That same reasonable person would have understood the Plans permitted the amendments made by Defendants. Accordingly, there is no ambiguity that must be resolved in Plaintiffs' favor and the district court did not abuse its discretion by refusing to consider the extrinsic evidence Plaintiffs sought to introduce, including "course-of-performance"

evidence and the opinion of Gail Stygall. *Fulghum*, 938 F. Supp. 2d at 1102-03;

*see Kerber v. Qwest Pension Plan*, 572 F.3d 1135, 1149-50 (10th Cir. 2009)

(holding district court properly refused to consider extrinsic evidence because the

ERISA plan at issue was unambiguous).

### E. Motion for Reconsideration

After the district court granted summary judgment in favor of Defendants

on Plaintiffs' contractual vesting claims, Plaintiffs filed a motion for

reconsideration. They asserted, *inter alia*, the court erred by granting summary

judgment against class members covered by SPD #7 who were, at some point

during their employment, parties to collective bargaining agreements ("CBAs")

similar to the one which precluded the grant of summary judgment against named

plaintiff Britt. *See supra* n.9. The district court denied the motion as to this

point. On appeal, Plaintiffs assert the 185 class members covered by SPD #7[12]

"are subject to the same legal conclusions as Britt" and, thus, their claims should

also be allowed to proceed.

In their appellate brief, Plaintiffs do not explain exactly why the denial of

the motion for reconsideration on this point was an abuse of discretion. Instead,

in a footnote, they incorporate by reference arguments made before the district

---

[12]Plaintiffs also argue summary judgment should not have been entered against the class members covered by SPD #10. Plaintiffs' motion for reconsideration makes no mention of SPD #10. We, therefore, do not consider this argument.

court, directing this court to the forty-five pages in the appendix containing documents they filed in the district court. This is not acceptable appellate procedure. "Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and unnecessarily complicate the task of an appellate judge." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) (citations omitted). Accordingly, we deem the argument waived. *See id.*

In any event, it is impossible to discern from the pages of the appendix to which Plaintiffs' appellate brief refers whether there was any abuse of discretion. If the record before the district court included all the CBAs covering the SPD #7 class members and those documents contained terms materially similar to the CBA to which Britt was a party, *see Fulghum*, 938 F. Supp. 2d at 1113, then Plaintiffs may have a compelling argument the district court abused its discretion by denying the motion for reconsideration. *But see infra* n.15. Plaintiffs, however, have not met their burden of demonstrating these documents were part of the district court record. To the contrary, Plaintiffs appended multiple documents to their motion for reconsideration, indicating these documents were not part of the record when the district court ruled on Defendants' motion for summary judgment. Further, in the memorandum Plaintiffs filed in support of their motion for reconsideration, they conceded these appended documents were incomplete, asking the district court to "presume" that an unproduced document

"contains the same general provisions."  In short, Plaintiffs' inadequate and obtuse briefing makes it impossible for this court to determine whether the necessary documents were part of the district court record.  Accordingly, Plaintiffs have failed to show any abuse of discretion on the part of the district court with respect to the claims of class members covered by SPD #7.

The second basis on which Plaintiffs sought reconsideration is more troublesome.  As we understand the parties' arguments, Plaintiffs' motion for reconsideration asserted that summary judgment should not have been granted against class members identified in Defendants' motion to the extent Defendants' Mapping[13] showed that a large percentage of those class members were also covered by additional SPDs[14] and CBAs[15] not mentioned in Defendants' motion

[13]Defendants submitted documents in spreadsheet format in which they "identified the SPDs that they contended were applicable to each class member." *Fulghum*, 938 F. Supp. 2d at 1102 n.31.  The parties refer to these documents as the "Mapping."

[14]In their response to Plaintiffs' motion for reconsideration, Defendants did not contest Plaintiffs' assertion that multiple class members who were parties to the identified SPDs were also parties to additional SPDs and had asserted contractual vesting claims based on those additional SPDs.

[15]It appears Plaintiffs are now claiming the right to vested benefits may arise under the terms of various CBAs.  We agree with Defendants' assertion Plaintiffs have waived any such claim by stating in the Pretrial Order that their right to benefits arose pursuant to the terms of various SPDs and that the CBAs were merely extrinsic evidence.  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims . . . not included in the pretrial order are waived even if they appeared in the complaint . . . .").  Although the issue is not before this court, it is accordingly unclear why the district court refused to grant summary

(continued...)

- 25 -

for summary judgment. In other words, and by example, if a class member was identified in Defendants' motion because she asserted a claim to vested life insurance benefits arising under one of the thirty[16] SPDs identified in that motion, Plaintiffs argue it was error to enter summary judgment against her on *all her claims to vested life insurance benefits* if Defendants' Mapping showed she was covered by multiple life insurance SPDs, at least one of which was not among the thirty. Although Defendants characterized Plaintiffs' motion for reconsideration as a "stealth motion" seeking to "gut" the district court's order, Plaintiffs' point is well-taken.

In their motion for summary judgment, Defendants made the following representation to the district court:

> Defendants seek summary judgment only on the contractual vesting claims of those class members for whom the SPDs in effect when they retired are the same as or identical in all material respects to, those in effect when one or more Named Plaintiff retired. . . . Thus, if the Court grants summary judgment to Defendants on particular Named Plaintiffs' contractual vesting claims, Defendants will automatically be entitled to summary judgment on the corresponding class members' claims for the same vested benefits.

There is only one reasonable way to interpret this language consistent with controlling legal principles: Defendants sought summary judgment only on the

---

[15](...continued)
judgment in favor of Defendants on the claims raised by named plaintiff Britt. *See Fulghum*, 938 F. Supp. 2d at 1109, 1113.

[16]*See supra* n. 3.

specific claims of identified class members and only to the extent those claims arose from the thirty SPDs identified and discussed in Defendants' motion. Thus, Defendants were only entitled to summary judgment as to *claims premised on the thirty SPDs*, not as to *all* health or life insurance benefit claims asserted by each identified class member. Defendants did not seek, and thus clearly were not entitled to, summary judgment on *claims* premised on SPDs which they did not identify or discuss in their motion. This means Plaintiffs had no burden to present any evidence as to those additional claims in response to the motion for summary judgment.

Accordingly, to the extent an identified class member's claim to life insurance benefits arises from the terms of an SPD other than the thirty specifically discussed in the motion for summary judgment, it was error to dismiss that claim to life insurance benefits even though summary judgment was proper as to the claim arising from the identified SPD. *See supra* Section II. C. Likewise, to the extent an identified class member's claim to health benefits arises from an SPD other than the thirty specifically discussed in Defendants' motion, it was error to dismiss that claim to health benefits even though summary judgment was proper as to the claim arising from the identified SPD. *See id.* It was an abuse of discretion to deny Plaintiffs' motion for reconsideration on these two points because Defendants failed to present any evidence necessary to sustain the grant of summary judgment on claims not presented in their motion. *See*

*Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) ("Rule 59(e) relief is appropriate only where the court has misapprehended the facts, a party's position, or the controlling law." (quotation omitted)).

## III. Breach of Fiduciary Duty Claims

### A. Background

In the Third Amended Complaint, seventeen named plaintiffs raised claims alleging Defendants breached their fiduciary duties by misrepresenting and concealing material benefits information, and misleading them into believing their health and life insurance benefits could not be amended or terminated. The breach of fiduciary duty claims arose under 29 U.S.C. § 1104(a)(1) and were brought pursuant to 29 U.S.C. § 1132(a)(3).[17] All seventeen plaintiffs were employed by companies that eventually became wholly owned subsidiaries of

---

[17]In their rehearing petition, Plaintiffs have clarified their claims and disavowed raising any claim pursuant to 29 U.S.C. § 1133, the ERISA provision governing claims alleging the denial of benefits. *See Wright v. Sw. Bell. Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir. 1991) (concluding the most analogous state statute of limitations applies to § 1133 claims). It is for this reason that the original decision must be reassessed. Because it is now clear the § 1132(a)(3) claims arise *solely* from an alleged violation of the duties imposed on plan fiduciaries pursuant to 29 U.S.C. § 1104, the six-year statute of repose set out in 29 U.S.C. § 1113, rather than a state statute of limitations, is applicable to Plaintiffs' breach of fiduciary duty claims. *Id.* at 1290 ("Section 1113 is . . . only applicable to actions arising out of violations of the portion of the Act addressing fiduciary responsibilities, 29 U.S.C. §§ 1101–12.").

Defendant Embarq Corporation; all retired between 1976 and 2003; and all participated in Defendants' various ERISA plans.[18]

The district court granted the motion on the timeliness basis as to fifteen of the seventeen plaintiffs.[19]

*B.   Discussion*

This court applies a de novo standard of review to questions involving the applicability of a statute of limitations. *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir. 1991). This court has previously held that 29 U.S.C. § 1113 governs the time for filing a breach of fiduciary duty claim arising from an alleged violation of the duties imposed on ERISA plan fiduciaries by § 1104(a)(1). *Id.* Section 1113, *inter alia*, sets out the following six-year limitations period:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (b) in the case of an omission the

---

[18]Plaintiffs' breach of fiduciary duty claims involve defendants Embarq, the Committee, Sprint Nextel, Embarq Mid-Atlantic, CT&T, and Parker.

[19]Although the district court refused to grant summary judgment in favor of two named plaintiffs on Defendants' statute of repose argument, it failed to address any of the other bases on which Defendants claimed they were entitled to judgment on the § 1104 claims asserted by those two plaintiffs. *See Fulghum*, 938 F. Supp. 2d at 1123 n.117, 1127. Neither party has mentioned this anomaly in their appellate briefing.

> latest date on which the fiduciary could have cured the breach or violation . . . .

29 U.S.C. § 1113.  Neither party challenges the district court's determination that this general six-year limitation is a statute of repose.  *See Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 205 (3d Cir. 2006); *Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998).  Although Plaintiffs allege they did not, and could not, discover the alleged breach of fiduciary duty until Defendants amended the plans, statutes of repose operate to "extinguish a plaintiff's cause of action whether or not the plaintiff should have discovered within that period that there was a violation or an injury."  *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1224 (10th Cir. 2014) (quotation omitted).  Thus, assuming the statute of repose is applicable here, Plaintiffs had six years to file their suit—the six-year period being measured from (1) the date of the last action constituting a part of the breach or (2) the latest date on which the breach could have been cured by the fiduciary.[20]  29 U.S.C. § 1113.

---

[20]Plaintiffs argue their action was timely under the statute of repose because their claims did not accrue until Defendants amended or terminated the plans.  In support, they assert actual harm is an element of the relevant breach of fiduciary duty claims and, here, no harm occurred until the Plans were amended.  The district court rejected this argument, concluding a company is not acting as a fiduciary when it exercises its right to amend or terminate a welfare benefit plan, *see Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995), and further concluding an ERISA cause of action can accrue even if the plaintiff has not yet suffered an actual harm because accrual under the statute of repose is triggered by an act of the fiduciary.  Plaintiffs reassert their arguments on appeal but it is unnecessary to address the issue because we conclude the breach of fiduciary duty

(continued...)

In addition to the statute of repose, and a separate three-year statute of limitations not applicable here, § 1113 contains language providing that "in the case of fraud or concealment," a civil enforcement action "may be commenced not later than six years after the date of discovery of [the] breach or violation." 29 U.S.C. § 1113. The parties disagree on whether this provision applies when the fiduciary fraudulently conceals the alleged breach of fiduciary duty, thereby preventing a plaintiff from discovering it, *or* when the underlying breach of fiduciary duty claim involves allegations the fiduciary engaged in fraud. If it is the latter, Plaintiffs assert their claims are timely because they were filed within six years after amendment of the Plans led to the discovery of the alleged breach.

This court has never addressed the issue and the other circuit courts of appeals are split on it. The First, Third, Seventh, Eighth, Ninth, and D.C. Circuits have all held the "fraud or concealment" standard does not apply to breach of fiduciary duty claims based on a fraud theory but applies only when a fiduciary conceals the alleged breach. *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1552 (3d 1996) (holding the "fraud or concealment" language in § 1113 incorporates the federal doctrine of fraudulent concealment[21] and applies when the fiduciary has

---

[20](...continued)
claims are timely under the exception to the statute of repose to the extent those claims are premised on a fraud theory. *See infra*.

[21]The doctrine of fraudulent concealment tolls the running of a statute of limitations when the defendant has prevented the plaintiff from timely

(continued...)

- 31 -

taken steps to conceal the breach of fiduciary duty); *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1253 (1st Cir. 1996) (same); *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401-02 (9th Cir. 1995) (same); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172-73 (D.C. Cir. 1994) (same); *Radiology Ctr. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220-21 (7th Cir. 1990) (same); *Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491-92 (8th Cir. 1988) (same).  With the exception of the Seventh Circuit, these courts have adopted the standard without any in-depth analysis or discussion.  The Second Circuit has taken a different approach, declining to "fus[e] the phrase 'fraud or concealment' into the single term 'fraudulent concealment.'"  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001).  That court concluded, *inter alia*, the fraud or concealment provision does not toll the running of the six-year statute of repose but, instead, is a separate six-year statute of limitations applicable in certain types of cases.  *Id*. at 189.  After setting out the relevant definitions of the terms "fraud" and "concealment" and the statute's legislative history, the Second

---

[21](...continued)
discovering the breach of a duty.  To take advantage of the doctrine, a plaintiff must show "(1) the use of fraudulent means by the party who raises the ban of the statute [of limitations]; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action."  *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994) (quotations omitted); *see also Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016 (10th Cir. 2013) ("[F]raudulent concealment . . . by a defendant can toll the statute of limitations of a federal cause of action . . . .").

Circuit concluded the statute of limitations is applicable in two situations: when the plaintiff's breach of fiduciary duty claim is based on a fraud theory *and* when the defendant acts to conceal its breach from the plaintiff. *Id*. at 190.

As an initial matter, we do not agree with the Second Circuit's conclusion that the "fraud or concealment" provision is a separate statute of limitations. We believe the better view is that the "fraud or concealment" provision is a legislatively created exception to the six-year statute of repose. *See Nat'l Credit Union Admin. Bd.*, 764 F.3d at 1225 n.12 (noting statutes of repose "are subject to legislatively created exceptions" (quotation and alteration omitted)). The structure of § 1113 supports our conclusion. The statute of repose is set out in subparagraph (1) and a separate three-year statute of limitations is set out in subparagraph (2). 29 U.S.C. § 1113. The language creating the "fraud or concealment" exception follows these two paragraphs but is not contained in a third numbered paragraph. This statutory structure suggests the "fraud or concealment" provision is not meant to be a separate and distinct statute of limitations. Further, the provision begins with the word "except," indicating it must be read with reference to the two preceding subsections and not as a separate and independent statute of limitations.

Although we conclude the "fraud or concealment" provision is an exception to the statute of repose and not a separate statute of limitations, we must also determine the scope of the exception it creates. ERISA does not define the terms

"fraud" or "concealment" and, therefore, our "inquiry focuses on the ordinary meaning of the [term] at the time Congress enacted" the statute. *Nat'l Credit Union Admin. Bd.*, 764 F.3d at 1227. When § 1113 was enacted, "fraud was defined as a false representation of a matter of fact, whether by words or conduct, by false or misleading allegations or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury." *Caputo*, 267 F.3d at 189 (*citing Black's Law Dictionary* 788 (Rev. 4th ed. 1968)); *see also Nat'l Credit Union Admin. Bd.*, 764 F.3d at 1227 ("Courts often begin an ordinary meaning analysis by consulting contemporary dictionary definitions."). Concealment, at the time, "was defined as a withholding of something which one knows and which one, in duty, is bound to reveal." *Caputo*, 267 F.3d at 189 (*citing Black's Law Dictionary* 360 (Rev. 4th ed. 1968)). The fraud or concealment exception at issue here is set out in the disjunctive and "[c]anons of construction indicate that terms connected in the disjunctive . . . be given separate meanings." *Garcia v. United States*, 469 U.S. 70, 73 (1984); *United States v. Gonzales*, 456 F.3d 1178, 1182 (10th Cir. 2006) ("The use of the disjunctive 'or' indicates [the two words used in the statute] are to have different meanings."); *see also United States v. O'Driscoll*, 761 F.2d 589, 597 (10th Cir. 1985) ("When the term 'or' is used, it is presumed to be used in the disjunctive sense unless the legislative intent is clearly contrary."). We concede there is some overlap between the two terms. It is possible, however, to give the

terms separate meanings.  We, thus, conclude the exception to the general six-year statute applies when the alleged breach of fiduciary duty involves a claim the defendant made "a false representation of a matter of fact, whether by words or conduct, by false or misleading allegations or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury" or when the defendant conceals[22] the alleged breach of fiduciary duty.  *Caputo*, 267 F.3d at 189-90.

"Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished." *Joseph v. Wiles*, 223 F.3d 1155, 1168 (10th Cir. 2000).  Because a statute of repose "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time," it is not subject to equitable tolling,

_____

[22]Because Plaintiffs have not argued Defendants concealed their alleged breach of fiduciary duty, it is unnecessary to determine the scope of the concealment element of the statute of repose.  For example, the Second Circuit has concluded the concealment element applies in situations involving fraudulent concealment.  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001) ("Accordingly, our interpretation of ERISA § 413's 'fraud or concealment' provision overlaps somewhat with that of our sister circuits as we construe it to apply in cases of fraud or [fraudulent] concealment." (quotation omitted)).  Even under the approach taken by the Second Circuit, there remains the further question of whether fraudulent concealment encompasses both self-concealing ERISA violations or only overt acts taken subsequent to the alleged breach.  *See*, *e.g.*, *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013); *In re. Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497, 503 (3d Cir. 2001) (defining a "self-concealing act" as "an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims").

*Amoco Production Co. v. Newton Sheep* Co., 85 F.3d 1464, 1472 (10th Cir. 1996) (quotation omitted), or equitable estoppel, *Augutis v. United States*, 732 F.3d 749, 755 (7th Cir. 2013). Congress, by creating the "fraud or concealment" exception to the six-year statute of repose in § 1113, has effectively restored the judicial doctrines of equitable tolling and equitable estoppel to selected ERISA breach-of-fiduciary-duty claims. By ameliorating what would otherwise be a harsh result in situations where a fiduciary has engaged in prohibited conduct that cannot readily be discovered by a plan participant, even a participant exercising ordinary care to protect her rights, the exception promotes one of the primary purposes of ERISA—"to ensure that employees receive sufficient information about their rights under employee benefit plans to make well-informed . . . decisions." *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 451 (3d Cir. 2000). We are not persuaded by Defendants' assertion our interpretation will result in the exception swallowing the general six-year statute of repose. The exception Congress has created to the statute of repose is defined and limited.

There remains the question of whether the breach of fiduciary duty claims raised by Plaintiffs fall under the exception to the six-year statute of repose. The district court concluded Plaintiffs have not asserted Defendants concealed their alleged breach of fiduciary duty; Plaintiffs do not contest this conclusion on appeal. Thus, Plaintiffs' claims are timely only if the alleged breach of fiduciary duty is based on a fraud theory.

In a footnote in the reply brief they filed in district court, Defendants asserted Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and, thus, have failed to show the applicability of the "fraud or concealment" exception to the statute of repose. The district court agreed, and based its dismissal of Plaintiffs' breach of fiduciary duty claims on this argument. Although we agree Plaintiffs failed to plead fraud with the required particularity, dismissal of Plaintiffs' claims on this basis was error.

The purpose of Rule 9(b), which is "to ensure that the complaint provides the minimum degree of detail necessary to begin a competent defense," would not be served by relying on the Rule to dismiss Plaintiffs' claims at this stage of the proceedings. *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014). Although Defendants filed a motion to dismiss many of Plaintiffs' claims, they did not move to dismiss the breach of fiduciary claims because they failed to conform to Rule 9(b) or because they were untimely. Instead, Defendants alluded to the Rule 9(b) issue only after they filed their motion for summary judgment. This motion was filed after discovery was complete and the reference to Rule 9(b) was made for the first time in a footnote in Defendants' reply brief. It is no surprise, therefore, that Plaintiffs have never moved to further amend their complaint. *See* Fed. R. Civ. P. 15(a), (b).

In their summary judgment motion, Defendants set out each plaintiff's fraud theories in detail based on the information obtained during discovery. Plaintiffs' responsive brief also contains a comprehensive list of the factual allegations relating to the fraud claims. On appeal, Defendants rely solely on Rule 9(b) and make no argument that Plaintiffs' breach of fiduciary duty claims do not conform to the evidence. *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). Because the record was fully developed on the fraud claim, the district court erred by applying Rule 9(b). *See Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (holding "[d]ismissal of a complaint . . . pursuant to Rule 12(b)(6) is a dismissal on the pleadings unless 'matters outside the pleading are presented to and not excluded by the court . . .' in which case 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56'"); Fed. R. Civ. P. 12(d). Thus, the district court erred when it dismissed Plaintiffs' breach of fiduciary duty claims based on Rule 9(b). Accordingly, we **reverse** the district court's ruling on this point to the extent Plaintiffs' breach of fiduciary duty claims are premised on a fraud theory. On remand, Defendants, if they so choose, may present argument regarding the timeliness of Plaintiffs' breach of fiduciary duty claims not inconsistent with this opinion, including argument that Plaintiffs did not bring suit within "six years after the date of discovery" of the alleged breach. 29 U.S.C. § 1113.

## IV.  ADEA Claims

### A.  *Life Insurance Benefits*

In their complaint, Plaintiffs alleged the reduction or termination of their life insurance benefits constituted disparate impact discrimination based on age, in violation of the ADEA.[23]  *See Smith v City of Jackson*, 544 U.S. 228, 239-40 (2005) (holding the ADEA authorizes disparate impact claims).  The defendants against whom the ADEA claims were leveled are Embarq Corporation, CT&T, and Embarq Mid-Atlantic Management Service Company (collectively the "ADEA Defendants").  The ADEA class is defined as: "All persons, including all plan participants and all eligible spouse and dependent plan beneficiaries, whose rights to retiree life insurance benefits have been adversely affected by the

---

[23]The ADEA Plaintiffs brought their disparate impact claims pursuant to 29 U.S.C. § 623(a)(2).  *See Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005) (concluding 29 U.S.C. § 623(a)(1) "does not encompass disparate-impact liability").  Section 623(a)(2) makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to *deprive any individual of employment opportunities* or otherwise adversely affect his status as an employee, because of such individual's age." (emphasis added).  The ADEA Plaintiffs do not allege they have been deprived of employment opportunities.  The ADEA provision applicable to disparate treatment claims, makes it unlawful for an employer to "discriminate against any individual with respect to his *compensation, terms, conditions, or privileges of employment*, because of such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).  Although the ADEA Plaintiffs' claims appear to arise pursuant to § 623(a)(1), the argument has not been presented to us and thus we express no opinion on whether ADEA claims involving a *reduction in retiree benefits* must proceed under a disparate treatment theory rather than a disparate impact theory.  *See Erie Cnty. Retirees Ass'n v. Cnty. of Erie*, 220 F.3d 193, 210 (3d Cir. 2000) (addressing ADEA claims similar to those asserted here under 29 U.S.C. § 623(a)(1), not § 623(a)(2)).

terminations, reductions and changes in retiree life insurance benefits which were announced by Defendant Embarq Corporation on July 26, 2007" (the "ADEA Plaintiffs"). On that date, the ADEA Defendants reduced the maximum amount of basic life insurance coverage for many ADEA Plaintiffs to $10,000; group life insurance benefits for other ADEA Plaintiffs were eliminated completely.[24] No ADEA Plaintiff has replaced the reduced or eliminated insurance.

Disparate impact claims are grounded in the premise that "some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987 (1988). Accordingly, "a claim for disparate impact [does not] require proof of intentional discrimination*."* *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012). A plaintiff asserting a claim of disparate impact discrimination can make out a prima facie case by demonstrating the challenged employment practice caused a disparate impact on the protected group. *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1220 (10th Cir. 2013). "Statistical evidence is an acceptable, and common, means of proving disparate impact." *Id.* at 1222 (quotation omitted).

The framework applied to ADEA disparate impact claims differs from that applied to Title VII disparate impact claims because the "scope of disparate-

---

[24]The district court noted that the ADEA Plaintiffs whose group life insurance benefits were eliminated will still receive a company-provided death benefit.

impact liability under ADEA is narrower than under Title VII." *Smith*, 544 U.S. at 240. This is so because the ADEA "contains language that significantly narrows its coverage by permitting any 'otherwise prohibited' action 'where the differentiation is based on reasonable factors other than age.'" *Id.* at 233 (quoting the ADEA). Thus, although a Title VII defendant has the burden of producing evidence of a "business necessity" for the challenged employment practice, an ADEA disparate-impact defendant need only produce evidence the practice is based on "reasonable factors other than age" ("RFOA"). *Id.* at 241-43; *see also id.* at 238-39 (noting the RFOA provision is inapplicable when an ADEA plaintiff proceeds under a disparate treatment theory). "Unlike the business necessity test, which asks whether there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class, the reasonableness inquiry includes no such requirement." *Id.* at 243. At trial, the ADEA defendant must persuade the factfinder its reasonableness "defense is meritorious." *Meacham v. Knolls Atomic Power Lab., Inc.*, 554 U.S. 84, 101 (2008).

The district court granted summary judgment in favor of the ADEA Defendants on the life insurance disparate impact claim, ruling the ADEA Plaintiffs failed to meet their burden of setting out a prima facie case because they failed to present any relevant statistical evidence.[25] In the alternative, the

[25]The district court concluded the ADEA Plaintiffs had not identified appropriate comparators because their statistical evidence compared Plaintiffs to

(continued...)

district court concluded the ADEA Defendants were entitled to summary judgment because their decision to reduce or terminate the group life insurance benefit was based on a reasonable factor other than age.

The ADEA Defendants presented evidence that the change in employee life insurance benefits was motivated by a desire to reduce costs and bring life insurance benefits in line with those provided by other companies. There was evidence showing 73% of all companies and 85% of non-manufacturing companies do not provide life insurance benefits to retirees. The ADEA Defendants also presented evidence the cost reductions would not affect customer service but would assist them in remaining competitive and maintaining profitability. None of this evidence was controverted by the ADEA Plaintiffs and the ADEA Plaintiffs do not challenge the district court's statement the evidence showed the reduction or elimination of group life insurance benefits "would result in annual cash savings of approximately $4 million, annual expense reductions of $9.4 million, and a reduction in accrued balance sheet liabilities of $72.4 million."

On appeal, the parties continue to dispute whether the ADEA Plaintiffs' statistical evidence was sufficient to meet the prima facie burden. It is

[25](...continued)
*hypothetical* younger versions of *themselves.*

unnecessary to address this issue because summary judgment in favor of the ADEA Defendants was appropriate based on the RFOA defense.

The ADEA Plaintiffs assert the ADEA Defendants cannot meet their burden under the RFOA test unless they satisfy the standard set out in 29 C.F.R. § 1625.10(a), which permits reductions in employee benefit plans if justified by "significant cost considerations." The district court concluded this argument is misguided because § 1625.10(a) is inapplicable to the RFOA defense. Having reviewed the applicable law and the parties' arguments, we conclude, as did the district court, that § 1625.10(a), by its express terms, applies only to the equal cost/equal benefit safe harbor set out in 29 U.S.C. § 623(f)(2)(B)(i) and not the RFOA defense set out in 29 U.S.C. § 623(f)(1).[26]

The ADEA Plaintiffs have failed to challenge the evidence supporting the ADEA Defendants' RFOA defense, confining their argument to an assertion the ADEA Defendants' evidence does not meet the significant cost consideration standard because any savings from the life insurance changes were not significant. Because the ADEA Plaintiffs have not identified a disputed issue of

---

[26]The ADEA Plaintiffs argue the ADEA Defendants cannot meet their burden under the RFOA defense unless they show the challenged employment practice was based on significant cost considerations. They do not argue the RFOA defense is wholly inapplicable to their disparate impact claim. Nor could they. The Supreme Court has held that an employer can defend against a disparate impact ADEA claim by raising the RFOA defense. *Meacham v. Knolls Atomic Power Lab., Inc.*, 554 U.S. 84, 93-96 (2008). The RFOA is only inapplicable when the plaintiff proceeds under a disparate treatment theory. *See Smith*, 544 U.S. at 238-39; *see also supra* n.23.

material fact on the reasonableness of the ADEA Defendants' actions under the applicable RFOA standard, the district court was correct to grant summary judgment in favor of the ADEA Defendants on the life insurance disparate impact claim.

> ### B. *Health Insurance Benefits*

In September 2007 and January 2008, Defendant Embarq terminated or reduced company-paid medical and prescription drug benefits for Medicare-eligible retirees. The ADEA Plaintiffs alleged this was a violation of the ADEA. The ADEA Defendants moved to dismiss these health benefit claims, arguing they failed as a matter of law because federal regulations expressly permitted the reduction in such benefits for Medicare-eligible employees.

"Section 9 of the ADEA authorizes the EEOC to 'establish such reasonable exemptions to and from any or all provisions of [the ADEA] as it may find necessary and proper in the public interest.'" *AARP v. EEOC*, 489 F.3d 558, 563 (3d Cir. 2007) ( quoting 29 U.S.C. § 628). In 2007, the EEOC adopted a regulation exempting from all ADEA prohibitions any alteration, reduction, or elimination of health benefits for retirees who are eligible for Medicare health benefits. 29 C.F.R. § 1625.32(b). The district court concluded § 1625.32(b) foreclosed the ADEA Plaintiffs from prevailing on their claims and dismissed them.

The parties' appellate arguments center on whether 29 C.F.R. § 1625.32 is a valid exercise of the authority granted to the EEOC by Congress in Section 9. The ADEA Plaintiffs argue § 1625.32 is not a valid exercise of agency powers because it conflicts with the Older Workers Benefit Protection Act of 1990 ("OWBPA"). *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002) ("A regulation cannot stand if it is arbitrary, capricious, or manifestly contrary to the statute." (quotations omitted)). In response to a ruling from the Supreme Court that bona fide employee benefit plans were not covered by the ADEA, Congress enacted the OWBPA, amending the ADEA to provide such coverage. *Ky. Retirement Sys. v. EEOC*, 554 U.S. 135, 148-49 (2008). The purpose of the OWBPA was "to provide that an employee benefit plan that discriminates on the basis of age is unlawful, except when the employer establishes entitlement to one of the affirmative defenses Congress has provided." *Id*. at 154 (Kennedy, J., dissenting). The ADEA Plaintiffs argue § 1625.32 is an invalid exercise of the EEOC's authority because it is inconsistent with congressional intent, which was to provide ADEA coverage for employee benefit plans. This argument is illogical. The very purpose of Section 9 is to permit the EEOC to establish exceptions to "*any or all*" provisions of the ADEA in limited circumstances. 29 U.S.C. § 628. We fully agree with the Third Circuit that any exception promulgated by the EEOC pursuant to the express power granted it by Congress, even those shown to be reasonable and proper, will necessarily be

inconsistent with the express terms of the ADEA. *AARP*, 489 F.3d at 563 ("By definition, the power to grant 'exemptions' provides an agency with authority to permit certain actions at variance with the express provisions of the statute in question."); *see Chevron, U.S.A., Inc., v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress."). Thus, the ADEA Plaintiffs' argument is easily rejected.

Congress has made clear, however, that any exception promulgated by the EEOC must be "reasonable" and "necessary and proper in the public interest." *AARP*, 489 F.3d at 564. The ADEA Plaintiffs challenge the reasonableness of § 1625.32 on only one basis. In support of their position, the ADEA Plaintiffs reference Section 101 of the OWBPA which states Congress intended "to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations." Older Workers Benefit Protection Act, Pub. L. No. 101-433, 104 Stat. 978 (1990). They assert the EEOC's regulation permits employers to circumvent the requirements of the equal-cost-equal-benefit provision, which was added to the ADEA by the OWBPA, thereby thwarting the purpose for which the OWBPA was passed. 29 U.S.C. § 623(f)(2)(B)(i) (permitting an employer to operate an employee benefit plan that discriminates on the basis of age when "the

- 46 -

actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker").

The ADEA Plaintiffs' reasoning is oddly circular.  As we have already concluded, the very purpose of Section 9 is to allow the EEOC to promulgate exceptions that conflict with the express terms of the ADEA.  Because *any* exception, even a valid one, will necessarily conflict with the ADEA, a party cannot challenge the reasonableness of the exception by simply identifying the conflict as the ADEA Plaintiffs have done here.  *See AARP*, 489 F.3d at 563 (holding an EEOC regulation allowing practices not otherwise permitted under the ADEA "does not render the regulation invalid").

The ADEA Plaintiffs' brief could be construed to argue the EEOC regulation is not reasonable because it is inconsistent with the overall purpose of the equal-cost-equal-benefit provision, not just the plain language of that provision.  At the time the exception was proposed, the EEOC stated the purpose of the regulation was to "ensure that the application of the ADEA does not discourage employers from providing health benefits to their retirees."  *Age Discrimination in Emp't Act; Retiree Health Benefits*, 68 Fed. Reg. 41,542, 41,542 (July 14, 2003) (notice of proposed rulemaking).  After conducting a study in 2001, the EEOC concluded "the number of employers providing retiree health benefits ha[d] declined considerably over the last ten years."  *Id*.  The EEOC's findings indicated employers were choosing to reduce health benefits for *all*

retirees, including those ineligible for Medicare who required bridge coverage, rather than risk violating the ADEA by reducing benefits only for retirees who could obtain coverage under Medicare. *Id.* at 41,545-46. The EEOC further found, "[a]fter extensive study," it was not "practicable" to apply the equal-benefit-equal-cost test "to the practice of coordinating employer-sponsored retiree health benefits with Medicare." *Id.* at 41,546. Accordingly, the EEOC promulgated 29 C.F.R. § 1625.10(a) "to protect and preserve the important employer practice of providing health coverage for retirees"—something not being accomplished under the ADEA as amended by the OWBPA. *Id.* Thus, the EEOC concluded the exception would benefit all retirees—a purpose in harmony, not conflict, with both the equal-cost-equal-benefit provision and the ADEA in general.[27] The ADEA Plaintiffs do not mention, let alone challenge, the EEOC's findings or conclusion. Accordingly, we reject their argument that § 1625.10(a) conflicts with the purpose of the ADEA.

The ADEA Plaintiffs have failed to show the EEOC lacked the authority to promulgate § 1625.10. They have also failed to show the regulation is invalid. They have made no argument that the actions of the ADEA Defendants are not

---

[27]The Third Circuit has addressed a nearly identical argument. That court concluded the "EEOC considered, at length, whether the equal cost equal benefit provision would be sufficient to address the problem of declining retiree health benefits, and concluded as a policy matter that relying solely on this approach would be impractical or impossible." *AARP v. EEOC*, 489 F.3d 558, 567 (3d Cir. 2007).

permitted under the applicable regulation. Accordingly, they have failed to show they can prevail on their claim. The district court therefore correctly dismissed the claim.

## V.     Conclusion

Having concluded Defendants did not contractually agree to provide Plaintiffs with lifetime health or life insurance benefits, we **affirm** the grant of summary judgment as to the contractual vesting claims arising from the thirty SPDs identified in Defendants' motion for summary judgment. To the extent the district court granted summary judgment against class members whose contractual vesting claims arise, in whole or in part, from SPDs other than the relevant thirty, we **reverse** the grant of summary judgment against those class members and remand for further proceedings not inconsistent with this opinion. We **reverse** the dismissal of Plaintiffs' § 1104(a)(1) breach of fiduciary claims but only to the extent those claims are premised on a fraud theory. Because Defendants' decision to reduce or terminate the group life insurance benefit was based on a reasonable factor other than age, their actions did not violate the ADEA and we **affirm** the grant of summary judgment in favor of Defendants on that claim. We also **affirm** the dismissal of Plaintiffs' ADEA claims involving the reduction or elimination of post-retirement health benefits for Medicare-eligible employees because an applicable regulation expressly permits Defendants' actions.