**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DARREN O'CONNOR,

     Plaintiff - Appellant,

v.

ANGELA WILLIAMS,

     Defendant - Appellee.

No. 14-1494
(D.C. No. 1:14-CV-01298-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Darren O'Connor appeals the district court's order granting Angela Williams'

motion for summary judgment on O'Connor's 42 U.S.C. § 1983 claims. Because we

conclude O'Connor failed to show Williams acted under color of state law, summary

judgment is appropriate, and we affirm the district court's ruling.

**BACKGROUND**

Plaintiff Darren O'Connor is a political activist who focuses on home

foreclosure issues. Defendant Angela Williams is a Colorado state house

representative and the chair of the House Committee on Business, Labor, Economic

and Workforce Development. In 2013, the committee considered a bill that proposed

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to reform the home foreclosure process in Colorado. O'Connor and members of his advocacy group contacted Williams' office and requested to meet with her to discuss the group's support for the bill. When their efforts were unsuccessful, they staged a sit-in in front of her office.

After the bill died in committee, O'Connor continued to attempt to meet with Williams. In May 2013, he approached her at a town hall meeting where the two had a five-minute conversation. According to Williams, the conversation made her uncomfortable because O'Connor "was in [her] personal space." Aplt. App. at 160. Although Williams said she told a police officer that it was time for O'Connor to leave, O'Connor denied that the officer asked him to go.

A month later, O'Connor and others distributed leaflets throughout Williams' neighborhood. O'Connor left a leaflet and his business card on Williams' doorstep. When Williams learned her neighbors received the leaflets but not the business card, she contacted law enforcement to express concern for her safety and to request extra patrols in her neighborhood.

Three months later, O'Connor showed up in the audience at a local high school where Williams was on a panel. Williams left early and didn't interact with O'Connor. Two days later, O'Connor was in the front row when Williams held a town hall meeting to discuss a local school board election. Williams asked police to attend because she "was getting concerned about the more aggressive efforts to harass" her. Aplt. App. at 165. After the meeting, O'Connor approached Williams, leaned in, and told her he was "going to continue to pressure" her until she met with

2

him and explained why she killed the foreclosure bill. Aplt. App. at 168. Police officers who witnessed the conversation asked O'Connor to leave, and he did.

After O'Connor posted several messages on Williams' official Facebook page—including accusations that she was aligned with the interests of big banks and against the interests of her constituents—she blocked him from posting there because she "grew tired of the harassment." Aplt. App. at 169. O'Connor then created a new website that provided a forum to discuss Williams' handling of the bill. Others posted links to the new website on Williams' official Facebook page.

In October 2013, Williams moved to obtain a civil protection order against O'Connor, claiming to be a victim of stalking and physical assault or threats. A county magistrate judge entered a temporary protection order.

Ten days later, Williams and O'Connor attended a meeting of the State House District 7 Democrats. Police officers served O'Connor with the temporary protection order at the meeting and escorted him from the building. The order directed O'Connor to appear at another hearing to show why the temporary order shouldn't be permanent. At that hearing, the magistrate judge denied Williams' request to make the protection order permanent, concluding that to do so would violate O'Connor's First Amendment right to political speech.

O'Connor then brought this action against Williams under 42 U.S.C. § 1983, claiming (1) First Amendment retaliation, (2) unreasonable seizure and malicious prosecution under the Fourth Amendment, and (3) denial of due process and malicious prosecution under the Fourteenth Amendment. The district court granted

summary judgment in Williams' favor, finding no § 1983 liability because there was no state action. O'Connor appeals.

**DISCUSSION**

We review a district court decision granting summary judgment de novo. *Fulghum v. Embarq Corp.*, 785 F.3d 395, 403 (10th Cir. 2015). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and evidence submitted by the parties in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**I.      The district court did not prematurely grant summary judgment.**

O'Connor contends summary judgment was premature because he wasn't given an opportunity to present facts in opposition to Williams' motion for summary judgment regarding whether Williams acted under color of law. For example, O'Connor suggests the district court prohibited additional discovery on O'Connor's allegation that Williams may have used state funds to pay for her legal fees related to the protection order.

As O'Connor acknowledges, the Federal Rules of Civil Procedure provide a mechanism for a party to seek additional facts in opposition to a summary judgment motion. *See* Fed. R. Civ. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."). Here, O'Connor's counsel specifically advised the district court at a

4

scheduling conference that he planned to file a Rule 56(d) motion in order to depose Williams. But O'Connor never filed a motion to take Williams' deposition or, for that matter, to seek *any* additional discovery.[1]

The district court had no obligation to provide what O'Connor didn't request. *See Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) ("[The predecessor to Rule 56(d)] does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements."). Because O'Connor didn't file a Rule 56(d) motion, he can only speculate as to whether Williams used state funds to obtain and enforce the protection order, or whether he might develop other facts supporting his opposition to Williams' summary judgment motion. But such speculation doesn't entitle O'Connor to reversal on this basis.

O'Connor also argues the district court erred in considering Williams' prior testimony from the protection-order hearing because that testimony was inadmissible hearsay.[2] However, at the summary judgment stage, a party need not submit evidence "in a *form* that would be admissible at trial" as long as its *substance* would be admissible there. *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)

---

[1] O'Connor suggests he didn't file a Rule 56(d) motion because the district court originally indicated during the scheduling conference that it believed Williams acted under color of law. But O'Connor concedes the district court's preliminary remark wasn't binding and that even after the court made this remark, the court pointed out the availability of a Rule 56(d) motion if the parties needed more discovery. Aplt. Rep. Br. at 4-5.

[2] O'Connor argues Williams' prior testimony is inadmissible because Williams is available as a witness at trial. *See* Fed. R. Evid. 804(b)(1) (allowing prior testimony from a different proceeding only if declarant is unavailable as witness).

(emphasis added)). For example, a party can submit an affidavit to support a motion for summary judgment—"despite the fact that affidavits are often inadmissible at trial as hearsay"—because the statements contained in the affidavit "may ultimately be presented at trial in an admissible form." *Id.*

Here, O'Connor challenges the form of the evidence—the hearing transcript— but not its substance. That is, he doesn't suggest that Williams couldn't repeat her prior testimony at trial. We decline to consider the possibility that the substance of the testimony might be inadmissible at trial because "arguments not briefed on appeal are waived." *United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002). And even assuming the transcript of Williams' prior testimony would be inadmissible in its current form, O'Connor hasn't alleged the substance of the transcript wouldn't be admissible in some other form—e.g., in the form of Williams' live testimony. Therefore, the district court's consideration of Williams' prior testimony doesn't entitle O'Connor to reversal.

## II.    O'Connor fails to show that Williams acted under color of law.

To state a claim for relief under 42 U.S.C. § 1983, O'Connor must establish he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was committed "under color of" state law. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014). To satisfy the color-of-state-law requirement, there must be such a close connection "'between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic*

6

*Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Traditionally, a defendant acts under color of state law if she uses power made possible only because she is "clothed with the authority of state law." *Hogan v. Winder*, 762 F.3d 1096, 1112 (10th Cir. 2014) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). Whether a defendant acts under color of state law is a legal determination to be made by the court. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1270-71 (10th Cir. 1989).

The district court concluded that based on the record before it, Williams didn't use her position to gain an advantage in obtaining the temporary protection order or in having it served on O'Connor. As a result, the district court decided O'Connor failed to show a real connection between Williams' conduct and her badge of state authority as an elected official.

O'Connor maintains this was error. He reasons that as an elected official, Williams is a state employee,[3] and he argues that state employment generally is sufficient to make someone a state actor. But an individual's status as a state employee doesn't automatically mean her actions can be attributed to the state. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). Instead, a plaintiff has the burden to establish a real connection between a defendant's actionable conduct and her badge of state authority. *Id.* at 494.

---

[3] O'Connor cites an Internal Revenue Service provision that defines the term "employee" to include an elected official of a state. *See* 26 U.S.C. § 3401(c).

7

Here, O'Connor's complaint focuses on Williams' acts of seeking and enforcing a protection order. The complaint alleged that Williams caused police officers to serve O'Connor with the protection order and escort him from a public political meeting. Additionally, as O'Connor points out, Williams listed "Representative Angela Williams" as her full name on an information sheet used to obtain the temporary protection order. But the question is whether Williams used her authority—authority made possible only because of her elected office—to do something an ordinary citizen can't do.

Colorado law imposes a duty on law enforcement officers to serve a protection order if asked to do so. *See* Colo. Rev. Stat. § 13-14-107(3) ("If a respondent has not been personally served with a protection order, a peace officer responding to a call for assistance shall serve a copy of the protection order on the respondent named in the protection order . . . ."). Thus, Williams had the right, like any other Colorado citizen, to seek a protection order. *See* Colo. Rev. Stat. § 13-14-104.5. She also had the right, like any other Colorado citizen, to request assistance in serving that order. And a police officer ultimately served the temporary protection order on O'Connor, as the officer would have been required to do for anyone else. *See* Colo. Rev. Stat. § 13-14-107(3).

Even considering all of Williams' acts together in the light most favorable to O'Connor, O'Connor hasn't established that Williams used power made possible only because of her elected office in obtaining and serving the order. In short, O'Connor hasn't met his burden to show as a matter of law that Williams' actions

8

were closely connected to her elected office. *See Brentwood Acad.*, 531 U.S. at 295

(requiring showing of close connection between state and challenged action such that

private behavior may be attributed to state).

Because O'Connor failed to establish Williams acted under color of state law

in obtaining and enforcing the protection order,[4] we affirm the district court's grant

of summary judgment in favor of Williams.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[4] On appeal, O'Connor emphasizes Williams' broader efforts beyond seeking and obtaining a protection order. Specifically, he points out Williams asked for police presence at her public meetings and for more patrols in her neighborhood, and police installed a camera on her street. But the focus of O'Connor's complaint is Williams' conduct in seeking, obtaining, and enforcing the protection order. Even if we assume the extra security measures are attributable to Williams' status as an elected official, O'Connor doesn't allege those security measures or Williams' actions in seeking them violated his constitutional rights. Thus, they can't form the basis of O'Connor's § 1983 claim. *See Brokers' Choice*, 757 F.3d at 1143 (explaining that plaintiff seeking relief under § 1983 must establish "a deprivation committed under color of state law").